FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARVIN ROBERTS; EUGENE
VENT; KEVIN PEASE; GEORGE
FRESE,
     *Plaintiffs-Appellants*,

v.

CITY OF FAIRBANKS; JAMES
GEIER; CLIFFORD AARON RING;
CHRIS NOLAN; DAVE
KENDRICK,
     *Defendants-Appellees.*

No. 18-35938

D.C. Nos.
4:17-cv-00034-HRH
4:17-cv-00035-HRH

OPINION

Appeal from the United States District Court
for the District of Alaska
H. Russel Holland, District Judge, Presiding

Argued and Submitted August 9, 2019
Fairbanks, Alaska

Filed January 22, 2020

Before: Richard C. Tallman, Sandra S. Ikuta,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Tallman;
Dissent by Judge Ikuta

# SUMMARY[*]

### Civil Rights

The panel reversed the district court's order dismissing claims brought under 42 U.S.C. § 1983 and § 1985 on the ground that the claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and remanded.

Plaintiffs were convicted of murder but sought post-conviction relief after an individual confessed to his involvement in the murder and named other men as actual perpetrators of the crime. Pursuant to plaintiffs' subsequent settlement agreement with prosecutors, the Alaska Superior Court vacated plaintiffs' convictions, prosecutors dismissed all indictments, and three of the plaintiffs were released from prison. Despite a global release of all claims by plaintiffs contained in the settlement agreement, plaintiffs brought this lawsuit against the City of Fairbanks and its officers alleging, among other things, malicious prosecution and *Brady* violations. The district court dismissed the action without leave to amend, explaining that although the Superior Court vacated plaintiffs' convictions pursuant to the settlement agreement and stipulation, the Superior Court did not declare the convictions invalid.

The panel held that where all convictions underlying § 1983 claims are vacated and no outstanding criminal judgments remain, *Heck* does not bar plaintiffs from seeking relief under § 1983. The panel held that because all convictions in this case were vacated and the underlying

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

indictments ordered dismissed, there remained no outstanding criminal judgment nor any charges pending against plaintiffs. The absence of a criminal judgment here rendered the *Heck* bar inapplicable; the plain language of the Supreme Court's decision in *Heck* required the existence of a conviction in order for a § 1983 suit to be barred. The panel further held that the district court's ruling to the contrary and the dissent's proposed disposition conflicted with this Circuit's decisions in *Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014), and *Taylor v. County of Pima*, 913 F.3d 930 (9th Cir. 2019).

The panel rejected defendants' argument that joinder requirements under Federal Rule of Civil Procedure 19 barred plaintiffs' § 1983 claims because the State of Alaska was an indispensable party to this litigation. The panel held that the State of Alaska was not a necessary party here because it had not claimed any interest relating to the subject of this action, as confirmed by defendants. The panel stated that plaintiffs could obtain complete relief through their § 1983 claims against the City of Fairbanks and its officers—the alleged perpetrators of the § 1983 violations—if their action was successful.

The panel considered defendants' arguments that plaintiffs' § 1983 claims may be dismissed based on the equitable doctrine of judicial estoppel, and that plaintiffs failed to state claims for malicious prosecution, even if not barred by *Heck*, because they did not allege a favorable termination. The panel held that because these arguments turned in part on the enforceability of the settlement agreement—an issue not passed upon below— the district court should be allowed to address these issues in the first instance.

Dissenting, Judge Ikuta stated that plaintiffs did not have their prior convictions "declared invalid by a state tribunal authorized to make such determination," *Heck*, 512 U.S. at 487, but instead reached an agreement with the state to vacate their convictions. Regardless of the plaintiffs' reasons for doing so, they could not now claim that the prior convictions were terminated in a manner that provides a basis for bringing § 1983 malicious prosecution claims. In holding otherwise, the majority cast aside the favorable-termination rule articulated by *Heck v. Humphrey* and thus was inconsistent with Supreme Court precedent.

**COUNSEL**

Anna Benvenutti Hoffmann (argued), Nick Brustin, Richard Sawyer, and Mary McCarthy, Neufeld Scheck & Brustin LLP, New York, New York; Mike Kramer and Reilly Cosgrove, Kramer and Associates, Fairbanks, Alaska; for Plaintiffs-Appellants Marvin Roberts and Eugene Vent.

David Whedbee, Jeffrey Taren, Tiffany Cartwright, and Sam Kramer, MacDonald Hoague & Bayless, Seattle, Washington; Thomas R. Wickware, Fairbanks, Alaska; for Plaintiffs-Appellants Kevin Pease and George Frese.

Matthew Singer (argued) and Peter A. Scully, Holland & Knight LLP, Anchorage, Alaska, for Defendant-Appellee City of Fairbanks.

Joseph W. Evans (argued), Law Offices of Joseph W. Evans, Bremerton, Washington, for Defendants-Appellees James Geier, Clifford Aaron Ring, Chris Nolan, and Dave Kendrick.

Samuel Harbourt, Orrick Herrington & Sutcliffe LLP, San Francisco, California; Kelsi Brown Corkran, Orrick Herrington & Sutcliffe LLP, Washington, D.C.; for Amici Curiae Scholars.

Steven S. Hansen, CSG Inc., Fairbanks, Alaska, for Amicus Curiae Tanana Chiefs Conference.

David B. Owens, Lillian Hahn, Benjamin Harris, and Emily Sullivan, The Exoneration Project, Chicago, Illinois, for Amici Curiae The Innocence Network, American Civil Liberties Union, and ACLU of Alaska Foundation.

## OPINION

TALLMAN, Circuit Judge:

This is an appeal from an order dismissing claims brought under 42 U.S.C. § 1983 and § 1985 on the ground that the claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The primary question before us is whether § 1983 plaintiffs may recover damages if the convictions underlying their claims were vacated pursuant to a settlement agreement. The answer depends on whether such a vacatur serves to invalidate the convictions and thus renders the related § 1983 claims actionable notwithstanding *Heck*. We conclude that where all convictions underlying § 1983 claims are vacated and no outstanding criminal judgments remain, *Heck* does not bar plaintiffs from seeking relief under § 1983. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

I

The following facts are alleged in the operative pleading or are subject to judicial notice:

On October 11, 1997, several men beat and kicked to death 15-year-old John Hartman on the streets of Fairbanks, Alaska. Plaintiffs Marvin Roberts, George Frese, Kevin Pease, and Eugene Vent (collectively "Plaintiffs") were arrested by the Fairbanks Police Department, tried, and convicted of the murder and received prison sentences ranging from 30 to 77 years. The men—three Alaska Natives and one Native American—were between the ages of 17 and 20.

Several years after the convictions, an individual named William Holmes confessed to his involvement in the murder

and named Jason Wallace and three other men as the actual perpetrators of the crime.  Partly based on this confession, Plaintiffs filed post-conviction relief ("PCR") petitions in Alaska Superior Court in September 2013.  The court ruled that the petitions stated a prima facie case of actual innocence, allowing Plaintiffs to proceed with discovery, which lasted two years.

On May 4, 2015, Jason Gazewood, counsel for Jason Wallace, wrote a letter to the post-conviction prosecutors,[1] expressing his concerns with the likely outcome of a PCR hearing.  Gazewood, a former Fairbanks prosecutor, wrote that their convictions were likely to be vacated and that a retrial would be "virtually unwinnable."  He noted that the lead investigator of the murder, Detective Clifford Aaron Ring, had "edit[ed] his recordings in such a way as to not record exculpatory information while using coercive techniques to obtain confessions," and that the Fairbanks Police Department ("FPD") was well aware of Detective Ring's "use of deceptive interviewing techniques."  For these reasons, among others, Gazewood warned the prosecutors that Plaintiffs were likely to seek—and win— tens of millions of dollars in a civil-rights suit against those involved in procuring their wrongful convictions.

---

[1] Gazewood's letter was addressed to Assistant Attorney General Adrienne Bachmann who had allegedly suppressed a memorandum documenting Holmes' 2011 confession to the Hartman murder from Plaintiffs and their counsel.  Because we review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), "accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party," *Fields v. Twitter, Inc.*, 881 F.3d 739, 743 (9th Cir. 2018), we do not address whether Plaintiffs' allegations can be proven.

After discovery, the state court held a five-week evidentiary hearing from October through November of 2015.  The following testimony was adduced:

- William Holmes testified that he, Jason Wallace, and three other men had murdered Hartman;

- Eleven witnesses corroborated Holmes' account;

- Four witnesses testified that Wallace had confessed to killing Hartman and provided consistent, interlocking accounts corroborating that fact;

- Arlo Olson, the sole witness who had identified Plaintiffs as assailants in an unrelated attack on Frank Dayton the night of the Hartman murder, testified that FPD officers coerced him into giving a false statement;

- Frank Dayton, the individual who had also been assaulted on the night of the murder, testified that his assailants had not been in Roberts' car, as had been asserted by the prosecution;

- An Alaska State Trooper testified that an investigation corroborated key elements of Holmes' confession and failed to find any evidence of Plaintiffs' guilt;

- Alibi witnesses provided accounts of the activities and whereabouts of Plaintiffs on the night of the murder, establishing that Plaintiffs were never together that night and could not have murdered Hartman or assaulted Dayton; and

- Forensic experts testified that the prosecution improperly advanced "evidence" that Frese's boot print matched the injuries on Hartman's face, stating that there was no scientifically reliable way to make this determination.

At the end of the evidentiary hearing, the judge told the parties that he would not render a decision for another six to eight months. Plaintiffs allege that prosecutors publicly stated that they would appeal any decision favorable to Plaintiffs all the way to the Alaska Supreme Court, thereby extending the men's already lengthy incarceration for an indefinite period.

Several weeks after the hearing and just before Christmas 2015, the prosecutors offered Plaintiffs a deal: the prosecution would consent to vacating the convictions and dismissing the charges, but only if all four plaintiffs agreed to release the State of Alaska and the City of Fairbanks (and their employees) from any liability related to the convictions.[2] Plaintiffs agreed and entered into a settlement agreement with the State of Alaska and the City of Fairbanks (the "Settlement Agreement"). The Settlement Agreement was filed with the Alaska Superior Court, and the parties jointly stipulated that the court would be asked to vacate Plaintiffs' convictions. The Settlement Agreement also provided that "[t]he parties have not reached agreement as to [Plaintiffs'] actual guilt or innocence."

---

[2] Roberts had already been released from prison and was on supervised parole, but the prosecution refused to release any of the other three plaintiffs from prison unless Roberts agreed to the same arrangement.

Nonetheless, Plaintiffs all signed the Settlement Agreement, which included the following key stipulations:

- The petitioners stipulate and agree that the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt.

- The parties stipulate and agree that there is sufficient new evidence of material facts that a new trial could be ordered under AS 12.72.010(4).[3]

- The parties stipulate and agree that this Court may immediately enter Orders vacating the Judgments of Conviction . . . and awarding each Petitioner the relief of a new trial for each of the charges for which Petitioners were convicted.

On December 17, 2015, after a judicially supervised mediation, the Alaska Superior Court convened a settlement hearing with all parties present and heard from representatives of the victims and counsel for all parties. The court explained that its role was to "ministerially sign the orders necessary to [e]ffect the decision of the attorney general," and that, having determined that the settlement was procedurally proper, it "had no authority to . . . review or to criticize" the attorney general's decision. At the conclusion of the hearing, the court vacated Plaintiffs' convictions, the prosecutors dismissed all indictments, and Vent, Frese, and Pease were released from prison. The parties inform us that

---

[3] Under Alaska Statute § 12.72.010(4), a person convicted of a crime may institute a PCR proceeding if the person claims "that there exists evidence of material facts, not previously presented and heard by the court, that requires vacation of the conviction or sentence in the interest of justice."

no further prosecution of these men has ensued and no new trial was ever ordered following the 2015 hearing.

Despite a global release of all claims by Plaintiffs contained in the Settlement Agreement, this civil-rights lawsuit was later commenced. On May 14, 2018, Plaintiffs filed a Second Amended and Consolidated Complaint and Jury Demand seeking relief under § 1983 against the City of Fairbanks and the four named FPD officers: James Geier, Clifford Aaron Ring, Chris Nolan, and Dave Kendrick (collectively "Defendants"). Vent and Frese alleged Fifth Amendment violations, and all four plaintiffs asserted the following causes of action:

1. 42 U.S.C. § 1983 deprivation of liberty;

2. § 1983 malicious prosecution;

3. § 1983 *Brady* violations;

4. § 1983 supervisor liability;

5. § 1983 civil rights conspiracy;

6. § 1985(3) conspiracy;

7. § 1983 *Monell* claims against the City of Fairbanks;

8. § 1983 First Amendment right of access;

9. Spoliation of evidence;

10. Negligence; and

11. Intentional or reckless infliction of emotional distress.

Plaintiffs requested a declaratory judgment that the Settlement Agreement is unenforceable, an award of compensatory and punitive damages, and attorney's fees.

On June 4, 2018, Defendants moved to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), or alternatively, for failure to join the State of Alaska as an indispensable party under Rule 12(b)(7).

The district court entered a final judgment and order dismissing Plaintiffs' negligence and negligent infliction of emotional distress[4] claims with prejudice,[5] and dismissing the other ten claims without prejudice, under Rule 12(b)(6).[6] *Roberts v. City of Fairbanks*, No. 4:17-CV-0034-HRH, 2018 WL 5259453, at \*10 (D. Alaska Oct. 22, 2018). But the court denied leave to amend "as amendment would be futile at th[at] time." *Id.* The district court dismissed the claims as barred by *Heck v. Humphrey*, holding that vacatur of convictions pursuant to a settlement agreement was insufficient to render the convictions invalid in specific reliance on the parties' stipulation that "the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt." *Id.* at \*8 (internal quotation marks omitted). As the court

---

[4] The court likely intended to refer to the intentional or reckless infliction of emotional distress claim, as Plaintiffs had not asserted a negligent infliction of emotional distress claim. The district court can clarify this matter on remand.

[5] The court noted that Plaintiffs did not oppose dismissal of these two claims.

[6] The court did not consider Defendants' alternative Rule 12(b)(7) argument. Defendants press that issue on appeal before us.

explained, "[a]ll the Superior Court did was vacate plaintiffs' convictions pursuant to the settlement agreements and the stipulation. The Superior Court did not declare their convictions invalid." *Id.* Plaintiffs timely appealed.

II

As previously noted, *see supra* n.1, we accept Plaintiffs' factual allegations as true and review de novo the Rule 12(b)(6) dismissal.

III

A

We agree with the district court that our analysis is guided by *Heck v. Humphrey*, the seminal case discussing whether a plaintiff may challenge the constitutionality of a conviction through a § 1983 suit for damages. 512 U.S. at 478. Petitioner Roy Heck was serving a 15-year sentence for voluntary manslaughter in the killing of his wife. *Id.* While his appeal from the conviction was pending in state court, Heck filed § 1983 claims in federal district court alleging that defendants, including county prosecutors and a state police investigator, had engaged in "unlawful, unreasonable, and arbitrary investigation," "knowingly destroyed" exculpatory evidence, and caused an "unlawful voice identification procedure" to be used at his trial, while acting under color of state law. *Id.* at 479. Heck sought compensatory and punitive damages but did not seek injunctive relief or release from custody. *Id.*

The district court dismissed Heck's suit because it implicated the legality of his conviction. *Id.* Heck appealed this ruling to the Seventh Circuit Court of Appeals. *Id.* While the federal appeal was pending, the state supreme

court affirmed his conviction and sentence. *Id.* The Seventh Circuit upheld the district court's dismissal of the claims, holding that

> [i]f regardless of the relief sought, the plaintiff [in a federal civil-rights action] is challenging the legality of his conviction, so that if he won his case the state would be obliged to release him even if he hadn't sought that relief, the suit is classified as an application for habeas corpus and the plaintiff must exhaust his state remedies, on pain of dismissal if he fails to do so.

*Id.* at 479–80 (footnote and citations omitted).

Upon review, the Supreme Court disagreed with the circuit court's conclusion regarding exhaustion and stated that "§ 1983 contains no exhaustion requirement beyond what Congress has provided." *Id.* at 483. Instead, the Court stated, the question before it was "whether the claim is cognizable under § 1983 at all." *Id.* Recognizing that § 1983 "creates a species of tort liability," *id.* (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)), the Court began its analysis by looking at the common law of torts, specifically, the cause of action for malicious prosecution, which it described as the most analogous to Heck's claims, *id.* at 483–84. The Court emphasized that the favorable-termination[7] element of malicious prosecution

---

[7] We have said that the favorable-termination rule in the context of malicious prosecution refers to the termination of proceedings "in such a manner as to indicate . . . innocence." *Awabdy v. City of Adelanto*,

> avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.

*Id.* at 484 (alteration in original) (quoting 8 S. Speiser, C. Krause & A. Gans, American Law of Torts § 28:5, at 24 (1991)).

The *Heck* Court noted its similar longstanding concern "for finality and consistency" and general disinclination to "expand opportunities for collateral attack." *Id.* at 485–86. Based on this laudatory concern and "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," *id.* at 486, the Court adopted a version of the common law's favorable-termination rule for § 1983 damages claims that "call into question the lawfulness of conviction or confinement," *id.* at 483. The Court articulated four ways in which a § 1983 plaintiff could satisfy this requirement:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must

---

368 F.3d 1062, 1068 (9th Cir. 2004). As discussed below, we leave to the district court the question whether Plaintiffs have alleged sufficient facts to state a claim for malicious prosecution.

> prove that the conviction or sentence has been [1] reversed on direct appeal, [2] expunged by executive order, [3] declared invalid by a state tribunal authorized to make such determination, or [4] called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87 (footnote omitted).**[8]**   Here, we need only consider whether Plaintiffs' convictions were "declared invalid by a state tribunal authorized to make such determination," *id.* at 487, when the Alaska Superior Court vacated their convictions based on the Settlement Agreement.

The *Heck* Court was explicit:   "If the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  *Id.* (footnote omitted).   Because all convictions here were vacated and underlying indictments ordered dismissed, there remains no outstanding criminal judgment nor any charges pending against Plaintiffs.   The absence of a criminal judgment here renders the *Heck* bar inapplicable; the plain language of the decision requires the existence of a conviction in order for a § 1983 suit to be barred.  *See id.*

Defendants argue, and the dissent agrees, that even though the convictions were vacated, they are still "valid" and so Plaintiffs' civil-rights claims are not cognizable.  But

---

**[8]** We have held that *Heck* applies equally to claims brought under § 1985.  *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004).

the plain meaning of *Heck* and our precedents counsel otherwise. According to *Black's Law Dictionary*, the definition of "vacate" is "to nullify or cancel; make void; *invalidate*." *Black's Law Dictionary* 1782 (10th ed. 2014) (emphasis added). Nevertheless, Defendants maintain that the state court did not declare the convictions "invalid," as required by *Heck*, despite vacatur, because Plaintiffs, pursuant to the Settlement Agreement, "confirm[ed] the validity of their original convictions and sentences." The district court agreed, concluding that vacating Plaintiffs' convictions and sentences "is not the same thing [as invalidating them] for purposes of *Heck*." *Roberts*, 2018 WL5259453, at \*10. The dissent claims allowing a § 1983 action based on vacated convictions is novel and contrary to our precedents. *See post*, at 41. We address each argument in turn.

B

The district court's ruling and the dissent's proposed disposition conflict with our decisions in *Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014), and *Taylor v. County of Pima*, 913 F.3d 930 (9th Cir. 2019). Unfortunately, the district court did not have the benefit of *Taylor*, our most recent decision in this area, when it dismissed the case. There, we considered the vacatur of multiple convictions pursuant to an agreement following a post-conviction relief petition based on newly discovered evidence calling the convictions into question—mirroring the circumstances here. 913 F.3d at 932. The appellant in *Taylor*—convicted of felony murder in 1972—entered into a plea agreement with the state in 2013 whereby his original 1972 conviction was vacated, he pleaded no contest to the same counts, was resentenced to time served, and was ultimately released from prison. *Id.*

Our opinion in *Taylor* was firmly rooted in the reasoning that vacatur of a conviction by a state court constitutes invalidation under *Heck*. Specifically, we said that "under *Heck*, a plaintiff in a § 1983 action may not seek a judgment that would necessarily imply the invalidity of a state-court conviction or sentence unless, for example, *the conviction had been vacated by the state court*." *Id.* at 935 (emphasis added). We confirmed the district court's proper analysis of *Heck*: "*Heck* does not bar [Taylor] from raising claims premised on alleged constitutional violations that affect his 1972 convictions [which had been vacated pursuant to the settlement] but do not taint his 2013 convictions [to which he pleaded no contest]." *Id.* (internal quotation marks omitted). We concluded that "Taylor's 1972 jury conviction ha[d] been vacated by the state court, so *Heck pose[d] no bar to a challenge to that conviction* or the resulting sentence." *Id.* (emphasis added). We ultimately held that Taylor was barred from seeking incarceration-related damages because all the time he served was "supported by the valid 2013 state-court judgment," not the vacated 1972 convictions. *Id.*

Our dissenting colleague contends that *Taylor*'s conclusion that § 1983 suits based on vacated convictions are not barred by *Heck* is merely an "offhand comment" that was made "in passing" and is therefore not binding. *Post*, at 44. We think that reading of *Taylor* is too narrow. We expressly held there that *Heck* did not bar Taylor from seeking damages related to the 1972 conviction—just that Taylor could not seek *incarceration-related* damages, because the valid 2013 conviction "[a]s a matter of law . . . caused the entire period of his incarceration." *Taylor*, 913 F.3d at 935. *Cf. Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir. 2014) (allowing a § 1983 suit for nominal and punitive damages—but not incarceration-related damages—

where the plaintiff was convicted, his conviction was set aside on habeas for *Miranda* violations, and he was subsequently reconvicted without the tainted evidence). Taylor specifically challenged "his 1972 prosecution, convictions, and sentence and [did] not challenge his 2013 'no contest' pleas," recognizing that *Heck* would bar only the non-vacated judgment. *Taylor*, 913 F.3d at 935 (internal quotation marks omitted). We agreed that the 2013 judgment was valid because it had not been vacated, unlike the 1972 conviction. *Id.*

Far from an "offhand comment" made "in passing," *Taylor*'s understanding that a vacated conviction was "declared invalid" under *Heck* was an integral element underpinning our holding. We held that only the 2013 conviction—not the vacated 1972 conviction—barred his claim for incarceration-related damages, and we called the fact that the 2013 conviction supported his entire period of incarceration "critical[]." *Id.* That is no idle comment made in passing. Unlike in *Taylor*, here there is no substitute outstanding conviction to bar Plaintiffs from their suit for damages as Taylor's 2013 conviction barred his.

In *Rosales-Martinez*, the state court vacated the plaintiff's convictions pursuant to a settlement agreement following his filing of a habeas corpus petition alleging *Brady* violations. *See* 753 F.3d at 893. In 2004, Rosales-Martinez was convicted of four drug-related counts and sentenced to a term of imprisonment of 10 to 25 years. *Id.* at 892. He filed a state habeas petition after learning that the sole witness to testify against him had a criminal history that was not disclosed by the state as ordered by the court. *Id.* Rosales-Martinez then entered into a stipulated agreement with the state in which he agreed to withdraw his habeas petition and to plead guilty to one of the counts for which he

was charged in exchange for the state's recommending vacatur of his other convictions "based on the cumulative errors" he alleged and recommending to the court that he be sentenced only to time served. *Id.* at 893.

The state court accepted the agreement, vacated three of the four counts, and imposed a punishment of time served, whereupon Rosales-Martinez was released from prison. *Id.* at 894. He then filed a § 1983 action in federal district court based on the state's alleged *Brady* violations. *Id.* at 892. The district court concluded that Rosales-Martinez's § 1983 claim was untimely because he failed to file it within the two-year statute of limitations. *Id.* at 895. The court based its decision on the rule that "[a] federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."[9]  *Id.* (internal quotation marks and citation omitted).

We reversed, pointing to the Supreme Court's holding in *Heck* that "a § 1983 action challenging a conviction or sentence does not 'exist[]' until the conviction or sentence is invalidated."  *Id.* at 896 (alteration in original) (citation omitted).  Applying this rule, we stated, "*Heck* therefore teaches that Rosales-Martinez's claims did not accrue until the Nevada court vacated those convictions on December 2, 2008."  *Id.*  We thus implicitly held that vacating a conviction pursuant to a settlement agreement serves to invalidate the conviction under *Heck*.  Specifically, we stated that "Rosales-Martinez pleaded guilty to one of the four

---

[9] The court applied a statute of limitations of two years as provided by Nevada state law.  "Nevada law provides the statute of limitations because, in the absence of a federal provision for § 1983 actions, the analogous state statute of limitations for personal injury claims applies." *Rosales-Martinez*, 753 F.3d at 895.

counts of his original conviction, *with the other three being held invalid.*"  *Id.* at 899 (emphasis added).

We went on to remand the case so the district court could determine how Rosales-Martinez's guilty plea to one count under the release-dismissal agreement should be addressed:

> The fact that Rosales-Martinez was reconvicted following the vacation of his initial convictions, means that he still has an outstanding conviction. This outstanding conviction raises the question whether Rosales-Martinez's § 1983 action is barred by *Heck*'s holding that "[a] claim for damages [based] on a conviction or sentence that has not been so invalidated is not cognizable."

*Id.* at 897 (quoting *Heck*, 512 U.S. at 487) (alterations in original).  Indeed, our decision reversing the lower court was contingent upon the finding that *Heck* does not bar a suit for damages based on convictions that were vacated pursuant to a settlement agreement.

The dissent's attempt to distinguish *Rosales-Martinez* is unconvincing.  The dissent argues that *Rosales-Martinez* does not support our holding here because in that case we remanded "so the district court could address the viability of the plaintiff's complaint in the first instance."  *Post*, at 42. But the dissent misreads our opinion in *Rosales-Martinez*. We remanded that case *not* because we doubted that the state court's vacatur of Rosales-Martinez's three convictions invalidated them for purposes of *Heck*, but because his plea to the remaining count "suggest[ed] a continuous validity to a portion of his original conviction and sentence," and, therefore, "a possible inconsistency between it and a § 1983

action." *Rosales-Martinez*, 753 F.3d at 899.  Indeed, on the same page of the opinion that the dissent cites for the proposition that we remanded the case "so the district court could address the viability of the plaintiff's complaint in the first instance," *post*, at 42, we instructed the district court to determine Rosales-Martinez's prospects for compensatory damages "based on *the convictions that were vacated as invalid*," *Rosales-Martinez*, 753 F.3d at 899 (emphasis added).  Guided by these decisions and the plain language of *Heck*, we must order reversal here.[10]

C

Nevertheless, the district court held, and the dissent argues, that vacatur-by-settlement does not qualify as invalidation under *Heck*.  *See Roberts*, 2018 WL 5259453, at *8 ("All the Superior Court did was vacate plaintiffs' convictions pursuant to the settlement agreements and the stipulation. The Superior Court did not declare their convictions invalid."); *see post*, at 41.  The dissent's view that a conviction vacated by settlement is not "declared invalid" under *Heck* appears to arise out of its conflation of the favorable-termination rule in the tort of malicious

---

[10] There is a fundamental difference in how we and the dissent read *Heck*.  The dissent cites language defining an "outstanding criminal judgment" in *McDonough v. Smith*, 139 S. Ct. 2149 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 393 (2007)).  *See post*, at 47.  The dissent ignores the very next sentence in the *Wallace* opinion, which explains that the *Heck* rule for deferred accrual "delays what would otherwise be the accrual date of a tort action until the setting aside of *an extant conviction*."  549 U.S. at 393.  There are no extant convictions here.  All convictions were set aside.  In the absence of any remaining convictions, *Heck* does not bar § 1983 claims.  Our reading of *Heck* comports with that of our circuit precedent in *Taylor* and *Rosales-Martinez*.

prosecution with *Heck*'s four distinct means of favorable termination.**[11]** *See post*, at 48–51.

To be sure, *Heck* did create a favorable-termination rule, *see Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1139 (9th Cir. 2005), and the Supreme Court in *Heck* called malicious prosecution the "closest analogy" to a § 1983 suit for wrongful conviction, 512 U.S. at 484. But *Heck*'s favorable-termination requirement is distinct from the favorable-termination element of a malicious-prosecution claim. *Compare Awabdy*, 368 F.3d at 1068 (malicious-prosecution plaintiff must "establish that the prior proceedings terminated in such a manner as to indicate his innocence"), *with Heck*, 512 U.S. at 486–87 (favorable-termination rule satisfied when conviction or sentence is (1) reversed on direct appeal, (2) expunged by executive order, (3) declared invalid by a state court, or (4) called into question by a federal court's issuance of a writ of habeas corpus).

The dissent's contention to the contrary—that the analogy to malicious prosecution means that a § 1983 suit is barred by *Heck* unless the plaintiff could bring a claim for malicious prosecution at common law, *see post*, at 49—is simply wrong. That argument contravenes the plain

---

**[11]** The dissent quotes from the Supreme Court's recent opinion in *McDonough* to support its apparent claim that *Heck* establishes an exact replica of the favorable-termination rule from the malicious-prosecution context. *See post*, at 37. *McDonough*—a statute-of-limitations case— holds no such thing. Describing when a plaintiff may bring a § 1983 suit alleging fabrication of evidence, the Court wrote: "Only once the criminal proceeding has ended in the defendant's favor, *or* a resulting conviction has been invalidated within the meaning of *Heck* . . . will the statute of limitations begin to run." *McDonough*, 139 S. Ct. at 2158 (internal citation omitted) (emphasis added). By posing the favorable-termination rule and invalidation under *Heck* disjunctively, *McDonough* firmly undermines the dissent's insinuation that they are coterminous.

language of *Heck*, because convictions' being "called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512 U.S. at 487—the fourth listed exception to the *Heck* bar—does not necessarily indicate the innocence of the accused, as is required for a malicious-prosecution action to be maintained.  The Second Restatement of Torts— the very source upon which the dissent relies, *see post*, at 49—states that, where "new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused," there has been no "sufficient termination to meet the requirements of a cause of action for malicious prosecution."  Restatement (Second) of Torts § 660; *see also id.* § 660 cmt. g ("When the charge has been properly revived under the criminal procedure of the particular jurisdiction, there can be no liability . . . until the new proceedings have terminated in favor of the accused.").  *Prosser & Keeton on Torts* is in accord: "Any disposition of the criminal action which does not terminate it but permits it to be renewed . . . cannot serve as a foundation for the action [of malicious prosecution]."  W. Page Keeton et al., *Prosser & Keeton on Torts* § 119, at 874 (5th ed. 1984).  Thus, a "favorable" final order or disposition must "preclude[] the bringing of further proceedings against the accused."  Restatement (Second) of Torts § 659 cmt. g; *see also id.* § 660 cmt. a ("Proceedings are 'terminated in favor of the accused,' . . . only when their final disposition is such as to indicate the innocence of the accused.").  In short, there is no favorable termination in the malicious-prosecution context when new proceedings for the same offense have been instituted and are not subsequently terminated in favor of the accused.[12]

---

[12] The common-law treatises cited by the dissent, *see post*, at 49 n.9, are in harmony.  *See* 8 Stuart M. Speiser et al., *American Law of Torts*

In light of these well-established common-law principles, the dissent's suggestion that vacatur-by-settlement cannot qualify as a favorable termination under *Heck* because settlement was not considered a favorable termination at common law must fail. Convictions "called into question by a federal court's issuance of a writ of habeas corpus" routinely terminate in a manner that could not sustain a malicious-prosecution action. Indeed, it is not uncommon in the context of habeas relief for an individual to be subsequently re-tried and re-convicted on the same charges. *See, e.g.*, *Jackson*, 749 F.3d at 758. Our sister circuits are in accord. *See, e.g.*, *Pratt v. United States*, 129 F.3d 54, 56 (1st Cir. 1997); *United States v. Whitley*, 734 F.2d 994, 996 (4th Cir. 1984); *Gamble v. Estelle*, 551 F.2d 654, 654–55 (5th Cir. 1977); *Mullreed v. Kropp*, 425 F.2d 1095, 1096–97 (6th Cir. 1970).

Thus, the dissent's reading of *Heck*'s favorable-termination rule simply cannot be maintained. Both the common-law principles discussed above and our precedents in *Rosales-Martinez* and *Taylor* make clear that the law of our circuit is *not* that *Heck* bars a § 1983 suit unless the

§ 28:5 (2019) (regurgitating the standard recited in the Second Restatement); 54 C.J.S. *Malicious Prosecution* § 60 ("With respect to the malicious prosecution requirement that the prior proceeding must have terminated in plaintiff's favor, termination of the prosecution must be in such a manner that it *cannot be revived*." (emphasis added)); *id.* at § 61 ("The inquiry into whether a termination of a criminal prosecution was favorable to the defendant focuses on whether it was dispositive as to the defendant's innocence of the crime for which the defendant was charged."). *Cf. id.* § 63 ("A criminal proceeding in which the accused was originally convicted, but the conviction was reversed on appeal following a determination that the evidence on which the conviction was based had been obtained pursuant to a faulty search warrant, does not result in a favorable termination for the accused and thus cannot provide a basis for a malicious prosecution claim.").

plaintiff could succeed in a malicious-prosecution action, as the dissent would apparently hold.[13]

## D

The dissent accuses us of creating "a fifth method of favorable termination" in addition to *Heck*'s four—namely, vacatur-by-settlement. *Post*, at 47. Not so. We merely hold that where, as here, a § 1983 plaintiff's conviction is vacated by a state court, that conviction has been "declared invalid by a state tribunal authorized to make such determination," *Heck*, 512 U.S. at 487 (the third exception to *Heck*'s bar), and that *Heck* is therefore no bar to the suit.

The dissent also claims that our holding today would allow "criminal defendants who served their sentences" to "subsequently bring § 1983 actions to establish that they had been wrongfully convicted." *Post*, at 46. That, too, is incorrect. That reasoning conflates "conviction" and "incarceration." A person who is released from incarceration after fully executing his sentence would be

---

[13] The dissent cites language from *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017), arguing that it appears to undermine the contention that "favorable termination" is not coterminous in the malicious-prosecution and *Heck* contexts. *Post*, at 38. Explaining its reliance on common-law principles "[i]n defining the contours and prerequisites of a § 1983 claim," the Supreme Court in *Manuel* cited *Heck* in support of the assertion that "[s]ometimes, th[e] review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort." 137 S. Ct. at 920–21. However, regardless of what the Court meant by its "adopt wholesale" statement, it cannot be interpreted in a manner inconsistent with the plain language of *Heck* itself. As described above, interpreting this passing statement to mean that the favorable-termination requirement is coextensive in both the malicious-prosecution and *Heck* contexts contravenes a plain reading of *Heck* and our circuit's case law.

barred from bringing a § 1983 suit based on that conviction because the conviction remains "extant."[14] *Wallace*, 549 U.S. at 393. Indeed, as noted above, our holding adheres to *Heck*'s requirement that a conviction be invalidated in accordance with one of the four methods set out by the Court.

E

The dissent's effort to demonstrate the continuing validity of Plaintiffs' vacated convictions is based on an incomplete analysis of the Settlement Agreement's stipulations. The dissent claims that the convictions are still valid, even post-vacatur, based in part on the following stipulation agreed to by the parties: "[T]he original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt." That conclusion is problematic for two reasons.

First, Plaintiffs allege the stipulations were the product of an unenforceable agreement to waive their civil-rights claims. The adjudication of that claim may well result in a very different outcome on remand. Second, even if the Settlement Agreement were deemed enforceable, reading this stipulation to mean that Plaintiffs agree the convictions are *currently* valid ignores the very next stipulation, which

---

[14] The dissent accuses us of "play[ing] word games" in reaching this conclusion. *Post*, at 46 n.6. However, the dissent provides no authority for its assertion that, based on our reasoning, "a court could conclude that a defendant who has fully served a sentence has satisfied or discharged the convictions so that it is no longer 'outstanding' or 'extant'" for purposes of *Heck*. *Id.* Nor can it. We explicitly disclaim that characterization of our opinion: under our holding today, a person who has served his sentence but whose conviction remains unimpeached is barred by *Heck* from bringing a § 1983 suit based on that conviction.

acknowledges that new evidence now undermines the validity of the original verdicts and "requires vacation of the conviction or sentence *in the interest of justice*" pursuant to Alaska Statute § 12.72.010(4) (emphasis added).    That stipulation declares that "[t]he parties stipulate and agree that there is sufficient new evidence of material facts that a new trial could be ordered under AS § 12.72.010(4)." *Id.*  Indeed, these stipulations reflect the parties' agreement that (1) the original verdicts were properly and validly entered in 1997, and (2) now, a new trial could be ordered based on new evidence calling into question whether Plaintiffs were actually the killers, thus requiring vacatur of their once-valid convictions.

While we do not make a finding regarding the newly introduced evidence, we do note that the dissent's conclusion that the vacated convictions are still valid is undermined by its failure to look at the actual result of the Settlement Agreement.    There are no charges pending against any of these men four years after the Settlement Agreement was entered into.  Nor do they stand convicted of anything.

IV

Defendants argue, in the alternative, that joinder requirements under Federal Rule of Civil Procedure 19 bar Plaintiffs' § 1983 claims because the State of Alaska is an indispensable party to this litigation.    We reject this argument.

In deciding whether a party is indispensable, we "must determine: (1) whether an absent party is necessary to the action; and then, (2) if the party is necessary, but cannot be joined, whether the party is indispensable such that in equity and good conscience the suit should be dismissed."

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002) (internal quotation marks and citation omitted).  Under Rule 19, a party is required to be joined, if feasible, when:

> (A)  in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

We have held that joinder is "contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action." *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)).  In *Thomas, Head & Greisen Employees Trust v. Buster*, we similarly held that an entity was not an indispensable party to an action because "[it] had not claimed an interest in [the defendant's] limited partnership . . . at the time of the default judgment and the district court was able to craft appropriate and meaningful relief in the absence of [the entity] which . . . did not prejudice [its] property rights."  95 F.3d 1449, 1460 n.18 (9th Cir. 1996).

The State of Alaska is not a necessary party here because it has not claimed any interest relating to the subject of this action, as confirmed by Defendants.  Plaintiffs may obtain complete relief through their § 1983 claims against the City of Fairbanks and its officers—the alleged perpetrators of the § 1983 violations—if their action is successful.    We therefore hold that the State is not an indispensable party under Rule 19 and reject Defendants' alternate ground for affirmance.

V

Defendants also argue that Plaintiffs' § 1983 claims may be dismissed based on the equitable doctrine of judicial estoppel, and that Plaintiffs failed to state claims for malicious prosecution, even if not barred by *Heck*, because they did not allege a favorable termination.  Because these arguments turn in part on the enforceability of the Settlement Agreement—an issue not passed upon below—we will allow the district court to address these issues in the first instance.  *See Town of Newton v. Rumery*, 480 U.S. 386, 392–93 (1987); *Lynch v. City of Alhambra*, 880 F.2d 1122, 1125 (9th Cir. 1989).

In *Rumery*, the Supreme Court considered "whether a court properly may enforce an agreement in which a criminal defendant releases his right to file an action under 42 U.S.C. § 1983 in return for a prosecutor's dismissal of pending criminal charges."  480 U.S. at 389.  Rumery filed § 1983 claims against the town and its officers, alleging that they had "violated his constitutional rights by arresting him, defaming him, and imprisoning him falsely."  *Id.* at 391.  But before bringing suit, Rumery had agreed to release any claims he might have against the town and its officials to obtain the dismissal of criminal charges that had been brought against him.  *Id.* at 390–91.  In evaluating whether

Rumery was free to bring § 1983 claims despite the release-dismissal agreement, the Court, in a plurality decision, held that the enforceability of the agreement must first be established. *Id.* at 392–93. The Court adopted a case-by-case approach to determine (1) whether the agreement was entered into voluntarily, and (2) whether enforcement is in the public interest. *Id.* at 398 ("[W]e conclude that this agreement was voluntary, that there is no evidence of prosecutorial misconduct, and that enforcement of this agreement would not adversely affect the relevant public interests."); *see also id.* at 399–401 (O'Connor, J., concurring). We later concluded in *Lynch* that "*Rumery* requires the district court to hear the evidence and evaluate whether the public interest is served by enforcement of the release-dismissal agreement." 880 F.2d at 1128.[15]

Here, the district court dismissed Plaintiffs' claims at the pleading stage and did not hear any evidence to determine whether Plaintiffs voluntarily entered into the Settlement Agreement or whether enforcement is in the public interest.[16]    Therefore it is premature for us to address

---

[15] Following *Rumery*, we acknowledged that "the availability of release-dismissal agreements creates a risk that public officials will use the threat of criminal prosecution to suppress civil rights claims." *Lynch*, 880 F.2d at 1127 (citing *Rumery*, 480 U.S. at 394). Given the facts before us in *Lynch*, we found that "[t]he limited empirical evidence available suggests that this may be the case." *Id.* We do not address that question here since the district court did not conduct a *Rumery* hearing.

[16] Generally, the burden of pleading and proving the enforceability of a release-dismissal agreement would fall to defendants. *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1986 n.9 (2017) ("In civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading." (citing Fed. R. Civ. P. 8(c)(1) and *Rumery*, 480 U.S. at 391)); *see also Lynch*, 880 F.2d at 1125 ("Justice O'Connor, agreeing with the

whether the Settlement Agreement is enforceable, and we leave that issue for the district court.

## VI

We hold that the district court erred in applying the *Heck* rule to dismiss Plaintiffs' claims.  We therefore vacate the district court's dismissal order and remand for further proceedings consistent with this opinion.

**REVERSED**, **VACATED,** and **REMANDED** with instructions.

---

IKUTA, Circuit Judge, dissenting:

The Supreme Court could not have been more clear: "[T]o recover damages for allegedly unconstitutional conviction or imprisonment," a § 1983 plaintiff "*must prove* that the conviction or sentence has been [1] reversed on direct appeal, [2] expunged by executive order, [3] declared invalid by a state tribunal authorized to make such determination, or [4] called into question by a federal court's

plurality's result, wrote separately to emphasize that the *burden of establishing the enforceability of such agreements is borne by the civil rights defendants.*" (emphasis added)); *id.* at 1126 n.5 ("We note, therefore, that a majority of the Supreme Court in *Rumery* expressed the view that the burden of establishing that a release-dismissal agreement does not violate public policy rests with the civil-rights defendant seeking to invoke the agreement as a defense.").  Thus, to win on their judicial estoppel defense, Defendants have the burden of proving the enforceability of the Settlement Agreement.  However, insofar as Plaintiffs have alleged the unenforceability of the Settlement Agreement to meet elements of their claims for relief, they would bear the burden of proof on enforceability.

issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (emphasis added). In other words, to claim tort damages for a wrongful conviction, the plaintiff must prove that a court (or the executive) recognized that the conviction was invalid and wiped out the conviction. In holding that the plaintiffs here can bring § 1983 claims without meeting this requirement, the majority squarely contradicts Supreme Court precedent. I therefore dissent.

I

A brief description of some key facts is in order. The plaintiffs were all tried and convicted of murder in 1997. Several years later, they filed petitions for post-conviction relief based on new evidence. The majority recounts in detail the striking and persuasive evidence adduced by the plaintiffs at a post-conviction hearing—but this evidence is irrelevant, as there was no judicial determination that the facts recited by the majority are true or the witnesses credible. All we know is that the plaintiffs chose not to wait for the state court's ruling on their petitions, but instead entered into settlement agreements with the state and the City of Fairbanks that left the truth about their underlying convictions undecided. In fact, the settlement agreements expressly state they do not address issues related to the underlying convictions: the parties agreed that they had "not reached agreement as to . . . actual guilt or innocence." Rather than resolve the merits of their prior convictions, plaintiffs (all of whom were represented by counsel) agreed to withdraw their petitions for post-conviction relief, as well as all claims of actual innocence and all allegations of police and prosecutorial misconduct. The plaintiffs also agreed to release the state and the City of Fairbanks (and their

employees) from all liability arising out of or related to their arrests and convictions.

As required by the settlement agreements, the parties filed a stipulation with the state court that went even further than the settlement agreements. Rather than describe the prior convictions as wrongful or invalid, the parties agreed that "the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a reasonable doubt." The parties then agreed that the state court could vacate the judgment of conviction and order a new trial. Upon the court doing so, the state would dismiss the indictments. The court would then be obliged to order the plaintiffs' release.

Faced with the settlement agreements and the stipulation, the state court made clear that it was not opining on the merits of the underlying convictions or the terms of the settlements. At a hearing on December 17, 2015, a relative of the murder victim protested the settlements. In response, the state court explained that the attorney general was exercising his lawful authority to settle civil litigation, and the court had "no power of review or approval." "The duty of this Court, once that inherent authority is exercised, using the structures of the law, is to ministerially sign the orders necessary to [e]ffect the decision of the attorney general." Because the settlement agreements were procedurally proper, the state court explained, it was required to enter the "appropriate order" to vacate the plaintiffs' convictions. And once the plaintiffs' convictions were vacated, the state attorney general had the authority to dismiss the indictments. Under state law, the court had no power to block this exercise of authority; rather, the court "would violate the separation of powers in any attempt to stop him." As the court summed up, "[t]hat's a long way of

saying that this is a lawful settlement conducted under lawful procedure, under the inherent authority of the attorney general, over which this Court has no authority to . . . review or to criticize." The same day, the state court vacated the plaintiffs' judgments of conviction and commitment.

About two years later, on December 7, 2017, the plaintiffs filed a complaint against the City of Fairbanks and the police officers who were involved in obtaining the plaintiffs' convictions. The plaintiffs asked the court to order that the settlement agreements were unenforceable, which would relieve them from their agreements that their convictions were properly and validly entered as well as relieving them from their broad releases of liability. But the plaintiffs did not request vacatur of the stipulation, which was the basis for the dismissal of their indictments and vacatur of their convictions. Rather, the plaintiffs alleged that the dismissal of their indictments and vacatur of their convictions were "valid and cannot be undone even though the release cannot be enforced against" them. Thus, realizing the benefits of the stipulation while ignoring the obligations imposed by the settlement agreement, the plaintiffs alleged that the officers' "unlawful, intentional, willful, deliberately indifferent, reckless, and bad-faith acts and omissions caused [the plaintiffs] to be falsely arrested and imprisoned, unfairly tried, wrongfully convicted, and forced to serve more than 18 years imprisoned." The district court dismissed the complaint as barred by *Heck*, and this appeal followed.

II

Given that the plaintiffs did not wait for a judicial ruling that their prior convictions were invalid, but instead chose to vacate those convictions by means of settlements, the question arises whether the plaintiffs can nevertheless bring

constitutional tort claims for wrongful conviction under § 1983. The answer under *Heck v. Humphrey*, 512 U.S. 477 (1994), is no.

### A

*Heck v. Humphrey* held that § 1983 "creates a species of tort liability," and that "over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights." *Id.* at 483 (quoting *Carey v. Piphus*, 435 U.S. 247, 257–58 (1978)). Accordingly, the Court held that the common law rules "defining the elements of damages and the prerequisites for their recovery[] provide the appropriate starting point for the inquiry under § 1983." *Id.* (quoting *Carey*, 435 U.S. at 257–58).

In *Heck*, the petitioner had filed a suit in district court under § 1983 against two state prosecutors and a police investigator, alleging that they had engaged in an illegal investigation leading to the petitioner's conviction. *Id.* at 478–79. The petitioner's complaint sought compensatory and punitive monetary damages. *Id.* at 479. *Heck* concluded that "[t]he common-law cause of action for malicious prosecution provides the closest analogy" to the petitioner's claims for damages because "it permits damages for confinement imposed pursuant to legal process." *Id.* at 484.

Having identified malicious prosecution as the most analogous common-law cause of action for a claim of wrongful conviction, the Court focused on one of its key elements: "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Id.* This element of favorable termination "avoids parallel litigation

over the issues of probable cause and guilt" and "precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* (cleaned up). Accordingly, *Heck* concluded that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," which has "always applied to actions for malicious prosecution," is equally applicable to § 1983 damages actions that require "the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. In other words, if a plaintiff had been convicted, and that conviction had not been invalidated on appeal or through procedures for post-conviction relief, the plaintiff cannot prevail in a civil tort suit that requires the plaintiff to prove that the prior conviction or sentence was invalid. *See id.*[1]

Since *Heck*, the Court has reaffirmed the requirement that a plaintiff bringing a § 1983 malicious prosecution action must establish termination of the prior conviction in his favor. Indeed, just last year, the Court noted that "*Heck* explains why favorable termination is both relevant *and required* for a claim analogous to malicious prosecution that would impugn a conviction, and that rationale extends to an ongoing prosecution as well: The alternative would

---

[1] *Heck* also stated that a § 1983 action cannot be used as a substitute for a petition for writ of habeas corpus, 512 U.S. at 480, although under *Heck*'s reasoning, the habeas statute and § 1983 "were never on a collision course in the first place because, like the common-law tort of malicious prosecution, § 1983 requires (and, presumably, has always required) plaintiffs seeking damages for unconstitutional conviction or confinement to show the favorable termination of the underlying proceeding," *id.* at 492 (Souter, J., concurring).

impermissibly risk parallel litigation and conflicting judgments." *McDonough v. Smith*, 139 S. Ct. 2149, 2160 (2019) (emphasis added); *see also Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920–21 (2017) ("Sometimes, . . . review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort. *See . . . Heck v. Humphrey*."); *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1138–39 (9th Cir. 2005) (discussing *Heck*'s "favorable termination rule").

After adopting malicious prosecution's favorable-termination rule, *Heck* articulated what satisfied the necessary element of "termination of the prior criminal proceeding in favor of the accused." 512 U.S. at 484. According to *Heck*, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff *must prove* that the conviction or sentence has been [1] reversed on direct appeal, [2] expunged by executive order, [3] declared invalid by a state tribunal authorized to make such determination, or [4] called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87 (emphasis added); *see also id.* at 489 ("Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.").

Eliminating any doubt that a plaintiff *must* show one of these four terminations, *Heck* stated that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is *not cognizable* under § 1983." *Id.* at 487 (emphasis added). If a plaintiff cannot make the necessary showing, the plaintiff cannot bring a

§ 1983 malicious prosecution action that requires "the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486–87. Instead, the plaintiff can bring only those § 1983 claims that do not "demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," such as "a suit for damages attributable to an allegedly unreasonable search," because "such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* at 487 & n 7.[2]

B

As *Heck* makes plain, the plaintiffs here are precluded from bringing a § 1983 malicious prosecution action because their underlying convictions were not invalidated but were instead vacated pursuant to settlement agreements. The plaintiffs expressly agreed that they had "not reached agreement as to . . . actual guilt or innocence" and stipulated that "the original jury verdicts and judgments of conviction were properly and validly entered based on proof beyond a

---

[2] As we have explained, "under certain circumstances a plaintiff's § 1983 claim is not *Heck*-barred despite the existence of an outstanding criminal conviction against him." *Jackson v. Barnes*, 749 F.3d 755, 760 (9th Cir. 2014). For example, "plaintiffs who had been convicted for driving under the influence of alcohol could challenge the way in which their blood had been drawn when they were arrested" because their convictions were based on their pleas, "not [on] verdicts obtained with supposedly illegal evidence." *Id.* (quoting *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001)). Similarly, "a plaintiff convicted of resisting arrest could bring a § 1983 action for excessive use of force if the excessive force was employed against him after he had engaged in the conduct that constituted the basis for his conviction, because in such a case success on his § 1983 action would not imply the invalidity of the conviction." *Id.* (citing *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (en banc)).

reasonable doubt."[3]  No court has ruled on the validity of the plaintiffs' prior convictions or made a finding as to the plaintiffs' guilt or innocence.   Indeed, the state court explained in great detail that it had no power to review, approve, or block the attorney general's discretionary decision to vacate the convictions and dismiss the indictments.   As the state court summed it up, "this is a lawful settlement conducted under lawful procedure, under the inherent authority of the attorney general, over which this Court has no authority to . . . review or to criticize."   Far from declaring the plaintiffs' convictions invalid, the state court's ruling was merely the ministerial recognition of agreements between the plaintiffs and the state.

---

[3] The majority argues that it is improper to consider the parties' stipulation, because the plaintiffs allege that the "stipulations were the product of an unenforceable agreement to waive their civil-rights claims."  Maj. at 27.  The majority is mistaken; this allegation appears nowhere in the record.  Rather, the record establishes that the plaintiffs rely on the validity of the stipulation by alleging that "[t]he dismissal of the indictment[s] and vacation of [their] conviction[s]" are "valid and cannot be undone even though the release[s]" are unenforceable. Because the dismissal and vacatur are based on the stipulation, the continued existence of the stipulation is vital to the plaintiffs' claims.

Alternatively, the majority argues that the stipulation that plaintiffs' convictions were valid does not mean that plaintiffs agreed their convictions are *currently* valid, because the parties also stipulated that "there [was] sufficient new evidence of material facts that a new trial could be ordered under AS 12.72.010(4)."  Maj. at 27–28.  This is a red herring.  As the majority acknowledges, the only relevant issue for *Heck* purposes is whether the plaintiffs' convictions were "declared invalid by a state tribunal authorized to make such determination."  Maj. at 16.  The state court did not do so here, and the parties' agreement that the convictions could be vacated for a new trial is merely a vacatur by agreement.

Because the plaintiffs' convictions were not "declared invalid by a state tribunal authorized to make such determination," nor reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, *Heck*, 512 U.S. at 486–87, the plaintiffs are unable to show that their criminal proceedings were terminated in their favor. They are therefore barred from using a civil action to establish they were wrongly convicted. Thus, the plaintiffs' claim for damages stemming from their allegedly wrongful convictions are "not cognizable under § 1983." *Id.* at 487. *Heck*'s clear holding resolves this appeal.

## C

The majority raises two arguments to support its assertion that a conviction that is vacated by settlement is the same as a conviction that is "declared invalid by a state tribunal," 512 U.S. at 487, and therefore qualifies as a favorable termination for *Heck* purposes, Maj. at 16–22. Neither has merit.

First, the majority asserts that there is no difference between vacatur of a conviction by settlement and a declaration that a conviction is invalid because a dictionary defines "vacate" to mean "invalidate." Maj. at 16–17. But this theory is contrary to *Heck*. *Heck* refers to convictions that are "declared invalid by a state tribunal authorized to make such determination," 512 U.S. at 487, and a vacatur by agreement of the parties does not constitute a state court's declaration that the conviction is invalid. While the word "vacate" could mean "invalidate" in certain contexts, it does not carry that meaning in this context. "In law as in life . . . the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 135 S. Ct. 1074, 1082 (2015). Accordingly, there is no fair way to read

*Heck*'s reference to a conviction or sentence that is "declared invalid by a state tribunal authorized to make such determination," 512 U.S. at 487, to mean a conviction or sentence that is vacated pursuant to a settlement agreement.

Second, the majority contends that two Ninth Circuit cases support the position that vacatur by settlement is the same as a declaration of invalidity. *See Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014); *Taylor v. Cty. of Pima*, 913 F.3d 930 (9th Cir. 2019). But the majority's reliance is misplaced because neither holds that a vacatur by settlement qualifies as a favorable termination under *Heck*.

*Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014), does not help the majority because instead of addressing whether a vacatur by settlement constituted a favorable termination, we remanded so the district court could address the viability of the plaintiff's complaint in the first instance.

*Rosales-Martinez* considered a plaintiff's § 1983 complaint, which alleged that the state court had granted his state habeas petition and ordered his release from prison. *Id.* at 892. On appeal, the government filed a last-minute motion for judicial notice of several documents showing that this was incorrect; in fact, the parties had agreed to vacate the plaintiff's conviction on cumulative error grounds, and in return, the plaintiff agreed to plead guilty to one offense. *Id.* at 893. We took judicial notice of the documents proffered by the government, and noted the complexity they added to the case. *See id.* at 894–95. After considering the potential impact of these documents, we ultimately concluded that "[t]he viability and scope" of the plaintiff's "§ 1983 claim, in relation to *Heck v. Humphrey* . . . should be evaluated by the district judge on remand." *Id.* at 899. We explained that "[a] court of appeals should not rule on

the significance of [the plaintiff's] plea in the absence of a complete record and the comments of both sides, plaintiff and defendants, and without the benefit of the district court's analysis." *Id.*

Contrary to the majority, our decision in *Rosales-Martinez* to reverse the district court was not based on the finding that *Heck* permits a § 1983 action whenever a conviction has been vacated pursuant to a settlement agreement. Maj. at 20–21. Instead, *Rosales-Martinez* held only that the district court erred in dismissing the plaintiff's claims as untimely, because the claims—to the extent they were viable at all—could not have accrued until the Nevada court vacated the underlying convictions. 753 F.3d at 896. Because we refrained from resolving the question whether the plaintiff's claims were viable, the district court, on remand, felt obliged to refer the case to a pro-bono program "for the purpose of identifying counsel to assist Plaintiff with addressing the threshold question of whether his § 1983 claims are barred under *Heck v. Humphrey*." *Martinez v. Palmer*, No. 3:10-cv-00748-MMD-VPC, 2015 WL 5554147, at *5 (D. Nev. Sep. 21, 2015). Given our failure to rule on the viability of plaintiff's § 1983 claims, the majority errs in relying on *Rosales-Martinez* for any authoritative ruling on this issue.

Nor does *Taylor v. County of Pima*, 913 F.3d 930 (9th Cir. 2019), support the majority's position, because that case ruled on an entirely different issue. In *Taylor*, a plaintiff who had been convicted of 28 counts of felony murder for starting a fire at a Tucson hotel brought a state post-conviction petition, raising a new theory based on an affidavit from an expert: the hotel fire was not caused by arson. *Id.* at 932. In light of this new evidence, the government and the plaintiff entered an agreement to vacate the original

conviction and replace it with a new conviction, and the state court resentenced the plaintiff to time served.  *Id.*  The plaintiff then brought a § 1983 action against the government based on alleged unconstitutional practices in securing the original conviction.  *Id.*

We concluded that because all of the time that plaintiff served in prison was supported by a valid replacement conviction, he could not recover incarceration-related damages.  *Id.* at 935.  Although *Taylor* stated in passing that a plaintiff in a § 1983 action could challenge a conviction that had been "vacated by [a] state court," this statement was not necessary to its holding, because the resolution of the case was based on the determination that the plaintiff's valid replacement conviction barred his § 1983 claim.  *Id.*[4] Accordingly, *Taylor* offered no reasoning to support its offhand comment, and it is inconsistent with *Heck*; such statements "made in passing, without analysis, are not binding precedent."  *In re Magnacom Wireless, LLC*, 503 F.3d 984, 993–94 (9th Cir. 2007).[5]

---

[4] Although the majority refers to "*Taylor*'s *understanding* that a vacated conviction was 'declared invalid' under *Heck*," Maj. at 19 (emphasis added), the majority cannot—and therefore does not—point to any statement in *Taylor* to that effect; indeed, the words "declared invalid" never even appear in the opinion.

[5] The majority argues that *Taylor*'s comment that *Heck* does not apply when a conviction is "vacated by a state court" was not made in passing, because we later said that it was "[c]ritica[l]" that the time Taylor served in prison was supported by a new conviction.  Maj. at 19. Far from supporting the majority's position, this fact undermines it.  It was "[c]ritica[l]" that a new conviction supported Taylor's entire period of incarceration because, at that point, it made no difference that Taylor's earlier conviction was "declared invalid":  "even if Taylor proves constitutional violations concerning the 1972 conviction, he cannot

In sum, the plaintiffs' convictions were not "declared invalid by a state tribunal." *Heck*, 512 U.S. at 487. Rather, the convictions were vacated pursuant to settlement agreements, such that the "criminal judgment[s]" are still "outstanding," precluding the plaintiffs' claims for relief. *Id.* at 486–87. Neither *Rosales Martinez* nor *Taylor* are to the contrary. Therefore, the plaintiffs cannot make the necessary showing to bring their § 1983 malicious prosecution action.

## D

Although the plaintiffs fail to show that their vacated convictions were favorably terminated in one of the four methods specified by *Heck*, the majority suggests that the plaintiffs can sidestep *Heck* to bring their § 1983 action.

First, according to the majority, *Heck* does not apply to a vacated conviction because the conviction is no longer "outstanding." 512 U.S. at 486–87; Maj. at 16. To support this theory, the majority points to *Heck*'s statement that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." 512 U.S. at 487; Maj. at 16. According to the majority, this means that if a criminal judgment is no longer outstanding, i.e., it has been discharged or satisfied in some way, the criminal defendants may bring a § 1983

establish that the 1972 conviction caused any incarceration-related damages." *Id.* at 935. Thus, the assumption that Taylor's earlier conviction was "declared invalid" was "merely a prelude to another legal issue [i.e., the effect of Taylor's new conviction] that command[ed] the panel's full attention." *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001).

action without showing that the judgment was invalidated in one of the four ways identified in *Heck*. *See* Maj. at 16.

On its face, this conclusion is contrary to *Heck*. First, *Heck* precludes plaintiffs from bringing a § 1983 action unless they have shown that their conviction was invalidated by one of the four specific means. 512 U.S. at 486–87. The majority, by contrast, allows plaintiffs to bring a § 1983 action if their conviction was discharged or satisfied by any means.[6] Second, *Heck* explains that one purpose of the favorable-termination rule is to avoid the risk that a criminal conviction could be deemed valid in the criminal context and invalid in the civil context. *See id.* at 484–85. Under the majority's rule, this exact scenario could arise. If a conviction merely needs to be discharged or satisfied by some means, then criminal defendants who served their sentences could subsequently bring § 1983 actions to establish that they had been wrongfully convicted. And here the plaintiffs are attempting to invalidate their criminal judgments in a civil proceeding on the ground that they were "unfairly tried" and "wrongfully convicted," even though their criminal judgments were never invalidated in a criminal proceeding.

Of course, *Heck* did not hold that plaintiffs could use civil actions to challenge convictions that had been discharged by *any* means. Read in context, it is clear that

---

[6] The majority plays word games by claiming that a vacated conviction, but not a conviction that has been satisfied by service of the sentence, can be the basis for a § 1983 malicious prosecution action. Maj. at 27 & n.14. No binding precedent forecloses a court from concluding that a defendant who fully served a sentence has satisfied or discharged the conviction so that it is no longer "outstanding" or "extant"; like a vacated conviction, a satisfied conviction is a historical fact but not a current condition.

*Heck*'s reference to "outstanding criminal judgments" is a reference to judgments that have not been invalidated by one of the four methods of favorable termination listed in *Heck*. *Id.* at 487. This common-sense reading is supported by the Court's subsequent use of the phrase "outstanding criminal judgment" as a synonym for a judgment invalidated by one of these four means: "[T]he *Heck* rule comes into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment." *McDonough*, 139 S. Ct. at 2160 (internal quotation marks omitted) (quoting *Wallace v. Kato*, 549 U.S. 384, 393 (2007)).[7] Because the majority's conclusion that a plaintiff can bring a § 1983 malicious prosecution action so long as the underlying criminal judgment was discharged by *any* means is contrary to *Heck*, the majority's interpretation must be rejected.

Second, by claiming that vacatur by settlement qualifies as a favorable termination, even though it is not on *Heck*'s list of four qualifying methods of termination, the majority implicitly holds that vacatur by settlement is a fifth method of favorable termination. Maj. at 22–23. In other words, the majority asserts that a plaintiff can bring a § 1983 malicious prosecution claim to "demonstrate the invalidity" of a criminal judgment that has been vacated by agreement of the parties—even if the underlying conviction has not been reversed, declared invalid by a state court, expunged by

---

[7] The majority implies that it can ignore this definition of "outstanding criminal judgment," Maj. at 22 n.10, because the Supreme Court has stated that, in light of *Heck*, the statute of limitations for bringing a § 1983 claim does not accrue "until the setting aside of an *extant criminal conviction*," *Wallace*, 549 U.S. at 393. But the context makes clear that this statement merely echoes *Heck*'s rule that a plaintiff cannot bring a § 1983 action until a conviction has been favorably terminated in one of the four ways listed in *Heck*.

executive action, or called into question by a grant of habeas corpus.  512 U.S. at 486–87.  This approach also fails.

As an initial matter, *Heck* makes clear that plaintiffs "must" show that their convictions were terminated in one of four specific ways.  512 U.S. at 486–87.  Vacatur by settlement is not on the list, and the list is exclusive:  *Heck* does not permit other, unidentified ways of satisfying the favorable-termination requirement.  *See id.*  Thus, any attempt to recognize additional means of favorable termination is contrary to Supreme Court precedent.  *See id.*

Moreover, recognizing vacatur by settlement as another method of favorable termination is contrary to *Heck*'s reliance on the common-law cause of action for malicious prosecution, which was the Court's "starting point" for determining the viability of a § 1983 claim.  512 U.S. at 483–84 & n.4 (reiterating its "reliance on malicious prosecution's favorable termination requirement as illustrative of the common-law principle barring tort plaintiffs from mounting collateral attacks on their outstanding criminal convictions").  The common law did not recognize vacatur by settlement as a method of favorable termination:  For over a century, courts have recognized that a claim for malicious prosecution does not lie if the prosecution was abandoned based on a settlement or compromise.[8]  The treatises are in

---

[8] *See, e.g.*, *Erie R. Co. v. Reigherd*, 166 F. 247, 250 (6th Cir. 1909) ("A termination of a prosecution by nol. pros. by consent of the defendant, or by a compromise, is such a termination as to leave no foundation for denying that there was probable cause."); *Woodson v. McLauglin*, 239 S.W. 735, 736 (Ark. 1922) ("The testimony being undisputed that a compromise was effected as a result of which the prosecution out of which this litigation arises, was settled, a verdict was properly directed in defendants' favor."); *Bell Lumber Co. v. Graham*, 219 P. 777, 778 (Colo. 1923) ("It is well settled that a compromise

accord.**[9]** Thus, if a criminal proceeding "is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused," the resolution "is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution." Restatement (Second) of Torts § 660 (1977). "Although the accused by his acceptance of a compromise does not admit his guilt, the fact of the compromise indicates that the question of his guilt or innocence is left open." *Id.* § 660 cmt. c. As such, by entering into a settlement agreement and "[h]aving bought peace," an accused "may not thereafter assert that the

---

voluntarily made, or a settlement by the consent of the accused, defeats a recovery in an action for malicious prosecution based upon a criminal proceeding."); *Leonard v. George*, 178 F.2d 312, 313 (4th Cir. 1949) ("Notwithstanding the protests and declarations of plaintiff made at the time, we think that he is unquestionably preluded by the settlement from suing for malicious prosecution with respect to the case thus disposed of."); *Ferreira v. Gray, Cary, Ware & Freidenrich*, 87 Cal. App. 4th 409, 413 (2001) ("[Plaintiff] may have received a favorable *determination* at one point in the proceeding . . . [but] the litigation *terminated* as a result of a negotiated settlement in which both sides gave up something of value to resolve the matter.").

**[9]** *See, e.g.*, 8 Stuart M. Speiser et al., *American Law of Torts* § 28:5 n.2 (2019) ("[T]ermination resulting from negotiation, compromise, settlement, or agreement is not considered a favorable termination."); W. Page Keeton et al., *Prosser & Keeton on Torts* § 119, at 875 (5th ed. 1984) ("[W]here charges are withdrawn or the prosecution is terminated . . . by reason of a compromise into which [the accused] entered voluntarily, there is no sufficient termination in favor of the accused." (footnotes omitted)); 54 C.J.S. Malicious Prosecution § 67 ("Where both sides give up anything of value . . . to end litigation, a party cannot later claim he or she received a favorable termination . . . to establish malicious prosecution.").

proceedings have terminated in his favor."    *Id.*[10] Accordingly, vacatur by settlement is not—and never was— recognized as a favorable termination at common law, so the majority's attempt to recognize it as a fifth means of favorable termination under *Heck* squarely contradicts *Heck*'s reliance on the "common law of torts."    512 U.S. at 483.[11]

In sum, the majority has no authority to recognize a new means of favorable termination; *Heck*'s list is exclusive.  *See id.* at 486–87.  And even if the majority could recognize new means of favorable termination, vacatur by settlement is not

---

[10] The majority points out that some courts construing the four means of favorable termination in *Heck* do not require a showing that the termination was inconsistent with guilt.  Maj. at 23–26; *see, e.g.*, *Pardue v. City of Saraland, Ala.*, No. CV 99-0799-CG-M, 2004 WL 7338484, at *6 (S.D. Ala. Aug. 11, 2004) (rejecting argument that *Heck* requires a "final determination in favor of the accused").  Other courts require such a showing.  *See DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996) (issuance of a writ of habeas corpus was not an "indication of innocence," and thus did not qualify as a favorable termination under *Heck*, because plaintiff "conceded both the possession and sale of the cocaine").  But this subsequent elaboration of *Heck* has no bearing on the question whether *Heck* contemplated that vacatur by settlement— unanimously rejected as a favorable termination at common law— qualifies as a favorable termination for purposes of a § 1983 action.

[11] The majority mischaracterizes the dissent by arguing that the dissent would hold that a § 1983 plaintiff must be able to satisfy the common law's favorable-termination rule.  Maj. at 25–26.  The dissent would merely hold that the plaintiffs' convictions were not "declared invalid by a state tribunal authorized to make such determination," as required by *Heck*, and so the plaintiffs' § 1983 claims are "not cognizable."  512 U.S. at 487; *see supra* Part II.B.  The dissent discusses the common law only to show that the majority has no principled basis for recognizing vacatur by settlement as a fifth method of favorable termination under *Heck*.

a favorable termination at common law, so there is no basis for deeming it a method of favorable termination here.

\*\*\*

Simply stated, the plaintiffs did not have their prior convictions "declared invalid by a state tribunal authorized to make such determination," *Heck*, 512 U.S. at 487, but instead reached an agreement with the state to vacate their convictions. Regardless of the plaintiffs' reasons for doing so, they cannot now claim that the prior convictions were terminated in a manner that provides a basis for bringing § 1983 malicious prosecution claims. In holding otherwise, the majority casts aside the favorable-termination rule articulated by *Heck v. Humphrey* and thus is inconsistent with Supreme Court precedent. Accordingly, I dissent.