NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 13-2298, 13-2377
_____

WENDELL KIRKLAND; ANTHONY KIRKLAND

v.

LOUIS M.J. DILEO, Appellant at 13-2298
CITY OF LINDEN, Appellant at 13-2377
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 2-12-v-01196)
District Judge: Honorable Kevin McNulty
_____

Submitted Under Third Circuit LAR 34.1(a)
March 18, 2014
_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Opinion Filed:  September 10, 2014)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

This civil rights action involves allegations regarding the manner in which former City of Linden Municipal Judge Louis M.J. DiLeo ("Judge DiLeo") presided over the criminal trial of Wendell and Anthony Kirkland (collectively, the "Kirklands"). The Kirklands allege that Judge DiLeo played an inappropriately active role in the conduct of their criminal trial. They assert that after allowing the trial to proceed without a prosecutor or defense counsel present, Judge DiLeo conducted the direct examination of the arresting officer, and questioned Anthony Kirkland, in addition to performing his prescribed duties as the presiding judge.

At the conclusion of trial, Judge DiLeo found the Kirklands guilty of the underlying charges and sentenced Wendell Kirkland to 180 days of imprisonment, and Anthony Kirkland to two consecutive 180 day terms of imprisonment. The Kirklands successfully appealed their convictions, which were vacated, and subsequently filed this § 1983 complaint against Judge DiLeo and the City of Linden ("Linden") (collectively with Judge DiLeo, "Appellants") seeking damages for violations of their federal and state constitutional rights to counsel and due process. Judge DiLeo and Linden filed separate motions to dismiss, asserting Eleventh Amendment immunity and absolute judicial immunity. The District Court denied these motions. We will affirm.

2

## I. BACKGROUND

On April 12, 2010, in Linden Municipal Court while presiding over the arraignment of the Kirklands,[1] Judge DiLeo advised the Kirklands of the charges against them, the possible consequences of conviction, and their right to counsel and to the services of the municipal public defender. The Kirklands informed the court that they would retain private counsel; however, at their next court appearance, on May 3, 2010, neither Kirkland had done so. Instead, both requested a public defender. Judge DiLeo told the Kirklands, as he had at arraignment, that they had "waived the public defender."[2] (Appellant's Appendix ("App.") 25.) Judge DiLeo set a trial date, and advised the Kirklands that the public defender would be there for trial to represent them. In actuality, when the Kirklands returned to the Linden Municipal Court for trial on May 12, 2010, they "were not advised to speak with the Public Defender, nor were they assigned any counsel." (*Id*. at 26.) Instead, Judge DiLeo presided over the trial, which lasted less than one hour without either defense counsel or the municipal prosecutor present. The only

---

[1] The Kirklands were charged with committing several crimes, including theft by unlawful taking, possession of burglary tools, and possession of marijuana. The Union County Prosecutor downgraded the charges upon close review and remanded the charges to the Linden Municipal Court as disorderly persons offenses.

[2] Moreover, "[Judge] DiLeo never held a hearing to ascertain whether this 'purported' waiver of counsel was voluntary, knowingly, or intelligent . . . ." (App. 25.) Moreover, "[Judge] DiLeo subsequently admitted in response to the Judicial Complaint filed by the New Jersey Supreme Court's Advisory Committee on Judicial Conduct that this denial of counsel was consistent with the '***Court's prior practice,***' without further explanation." (App. 26.)

participants in the trial other than Judge DiLeo were the Kirklands and the arresting police officer.[3]

The proceeding occurred in an unusual fashion. Absent a prosecutor, Judge DiLeo conducted direct examination of the arresting officer and then allowed the Kirklands, without counsel, to cross-examine him. The officer then informed the court that there was no physical evidence to present despite the fact that the crimes charged were possessory offenses and theft.[4]

The Kirklands were ostensibly given the opportunity to present witnesses but their intended witnesses were not present that day. Judge DiLeo did not adjourn the matter. He also determined there to be no witnesses other than the Kirklands for the defense. Further, he proceeded to advise the Kirklands of their Fifth Amendment rights. Both Wendell and Anthony Kirkland testified in their own defense, and were cross-examined by the arresting officer. Judge DiLeo then questioned Anthony at length, and recalled the arresting officer to the stand for additional questioning.

At the conclusion of the trial, Judge DiLeo found the Kirklands guilty on all charges and sentenced Wendell Kirkland to 180 days of imprisonment "day-for-day",[5]

---

[3] Judge DiLeo presented no rationale for failing to postpone trial until counsel could appear.

[4] The arresting officer failed to enter into evidence the substance seized from the Kirklands that served as a basis for the charges and failed to produce laboratory test results confirming that the substance was, in fact, marijuana.

[5] This phrase reflects the Court's intent to foreclose the possibility of parole. (*See* App. 29.)

three consecutive one-year probationary terms, and fines totaling $2,700, exclusive of statutory penalties and costs. (*Id*. at 27, 29.) Anthony Kirkland was sentenced to two "day-for-day" consecutive 180 day terms of imprisonment, three consecutive one-year probationary terms, and fines totaling $3,100, exclusive of statutory penalties and costs. After sentence, the Kirklands were immediately remanded and incarcerated for 180 days.

The Kirklands appealed to the Union County Superior Court. Judge Moynihan reversed their convictions stating that the Kirklands' trial before Judge DiLeo was a "perversion of justice." (*Id*. at 30-31.)

On February 12, 2012, the Kirklands filed this § 1983 complaint (the "Complaint") in United States District Court for the District of New Jersey, naming Judge DiLeo and Linden as defendants, and seeking damages for violations of their Sixth and Fourteenth Amendment rights under the Constitution of the United States. The Complaint also asserted corresponding violations of their right to counsel and due process pursuant to the New Jersey Constitution. Lastly, the Kirklands averred a claim for civil rights conspiracy, pursuant to 42 U.S.C. § 1985.[6] Judge DiLeo and Linden, in separate motions to dismiss, asserted that the Kirklands' claims must be dismissed because (1) Judge DiLeo is entitled to absolute judicial immunity; (2) the Linden Municipal Court is an "arm of the state" entitled to Eleventh Amendment immunity; (3) Judge DiLeo's

---

[6] The Complaint actually asserts a claim for "conspiracy to violate civil rights actionable pursuant to 42 U.S.C. § 1983" (App. 37), but we shall assume the Kirklands intended to assert these claims pursuant to § 1985.

5

absolute judicial immunity prevents Linden from assuming liability for those acts so immunized; and (4) conspiracy has not been properly pled. The District Court denied both motions on all grounds. This appeal followed.[7]

## II.    ANALYSIS[8]

### A. Claims Against Judge DiLeo

#### i. Absolute Judicial Immunity

The first issue on appeal is whether the District Court erred by failing to grant Judge DiLeo's motion to dismiss on the basis that he is entitled to absolute judicial immunity for his judicial acts.[9] The District Court ruled that "based on the allegations of the Complaint, this case may go forward on the issue of whether Judge DiLeo so grossly departed from the judicial role as to shed his judicial immunity." (App. 10.)

Our review of the District Court's denial of a motion to dismiss is plenary. *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011). Because Judge DiLeo enjoys absolute judicial immunity for actions taken in his judicial

---

[7] Although Judge DiLeo and Linden filed separate motions to dismiss, their appeals have been consolidated.

[8] The District Court asserted jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review a collateral order denying a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) based on Eleventh Amendment immunity and absolute immunity. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-45 (1993).

[9] Appellants do not contend that Complaint fails to sufficiently plead substantive elements of the Kirklands' section 1983 and state law claims.

capacity, *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000), we must decide whether the Complaint set forth allegations that, taken as true, establish that the application of an exception to the doctrine of absolute judicial immunity is "above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) ("We have stated that, in deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.") (internal quotation marks and alterations omitted). For the reasons set forth below, we agree with the District Court's determination that Judge DiLeo is not entitled to absolute judicial immunity.

The well-established doctrine of absolute judicial immunity shields a judicial officer, who is performing his duties, from lawsuit and judgments for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Gallas*, 211 F.3d at 768. This doctrine derives from the belief that a judge should be able to act freely upon his or her convictions without threat of suit for damages. *See Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (stating that a "judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself"). That said, it is an equally familiar principle that judicial immunity is not absolute. *See Mireles*, 502 U.S. at 11; *Gallas*, 211 F.3d at 768. Indeed, there are two exceptions: "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for

7

actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (internal citations omitted). If the Complaint contains allegations sufficient to establish that either exception applies, Judge DiLeo's motion to dismiss on grounds of absolute judicial immunity must be denied. *See id.*; *see also Stump*, 435 U.S. at 355-69; *Gallas*, 211 F.3d at 768-73.

The application of the first exception turns on (1) "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge," and (2) the "expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

Here, the Complaint alleges that the trial was conducted without the aid of a prosecutor or defense counsel, and that, in addition to presiding over the Kirklands' trial as a judge, Judge DiLeo "conducted the direct examination of the arresting officer and subsequently permitted the [Kirklands] to cross-examine the officer." (App. 26.) Moreover, Judge DiLeo delegated the state's cross-examination of the Kirklands, who testified in their own defense, to the arresting officer, who had himself just testified as a fact witness. Judge DiLeo also "questioned Anthony Kirkland at length about his conduct on the evening of the arrest." (*Id.* at 27.)

It is plain that the questioning by Judge DiLeo of the arresting officer and the Kirklands in this manner is not a "function normally performed by a judge," *Stump*, 435 U.S. at 362, because, as the District Court explained, "Judge DiLeo was no longer acting as a neutral arbiter of disputes, but as a prosecutor or advocate." (App. 9.) Nor could the

8

parties have expected Judge DiLeo to participate in the criminal trial to such an extent. *See United States v. Ottaviano*, 738 F.3d 586, 595 (3d Cir. 2013) ("[A] judge must not abandon his [or her] proper role and assume that of an advocate.") (internal quotation marks omitted) (second alteration in original).[10] This point is magnified when considering the fact that both the prosecutor and defense counsel were not involved in the Kirklands' trial at all. Thus, assuming the allegations of the Complaint to be true, which we must, *McTernan*, 577 F.3d at 526, the same excess of judicial capacity seen in *Ottaviano* is present here.

We agree with the District Court's determination that the allegations contained in the Complaint set forth a plausible claim that Judge DiLeo's actions during the Kirklands' criminal trial went beyond legal error, such that he was no longer functioning in his judicial capacity. Hence, we will affirm the District Court's denial of Judge DiLeo's motion to dismiss on the basis of absolute judicial immunity.

### ii. Eleventh Amendment Immunity

Judge DiLeo also asserts that as a judge of the Linden Municipal Court he enjoys Eleventh Amendment immunity from suit, and seeks to dismiss claims that are brought against him in his official capacity.[11] The District Court determined that "the allegations

---

[10] In fact, in *Ottaviano*, we held that even where a prosecutor and standby defense counsel were present and engaged in trial, a judge's excessive questioning of the defendant went beyond the bounds of judicial capacity and became an improper cross-examination. 938 F.3d at 595-96.

[11] The Eleventh Amendment does not bar claims asserted against Judge DiLeo in his individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

of the Complaint . . . do not compel a conclusion that the [Kirklands] cannot surmount the Eleventh Amendment barrier" and therefore permitted the Kirklands' official capacity claims against Judge DiLeo to go forward "so that discovery may be had on the 'arm of the state' issue." (App. 13-14.)

We exercise plenary review over an order denying a motion to dismiss based on sovereign immunity. *Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 193 (3d Cir. 2008). We agree with the District's Court decision to allow the Complaint to proceed on the official capacity claims.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court interprets the Eleventh Amendment to protect states as well as their agencies and departments from suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A state agency or department is characterized as an "arm of the state", and is also entitled to immunity from suit under the Eleventh Amendment, when a judgment against it "would have had essentially the same practical consequences as a judgment against the State itself." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc).

Whether an agency is entitled to sovereign immunity is determined by balancing three factors: (1) whether the payment of the judgment would come from the state

10

treasury; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has. *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006) (citing *Fitchik*, 873 F.2d at 659). Judge DiLeo bears the burden to establish his entitlement to sovereign immunity. *Fitchik*, 873 F.2d at 659.

As an initial point, the District Court stated that "the first *Fitchik* factor has repeatedly been held to be the most important factor in the analysis" (App. 12) (internal quotations omitted), but, in fact, "we [] no longer ascribe primacy to the first factor." *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005). Instead, the financial liability factor is just "one factor co-equal with [the] others in the immunity analysis." *Id.* at 240.

Ultimately, the District Court evaluated all three factors and denied Judge DiLeo's motion to dismiss because he "lack[ed] any real information about the source of payment of any judgment, the funding of the Linden Municipal Court, or the degree of autonomy it possesses." (App. 13.) We agree.

As for the first factor, the face of the Complaint is plainly devoid of allegations as to whether payment of any judgment arising from the suit would come from the state treasury, but the Kirklands' briefs in its opposition to Appellants' motions to dismiss, and on appeal assert that it would not. Appellants, on the other hand, do not address the substance of the first factor, i.e., they do not opine on whether the Treasury of the State of New Jersey would be liable for any judgment arising from this suit, and in fact, fail to deny this allegation. Appellants' focus is instead on imploring our Court to thoroughly

11

analyze the second and third *Fitchik* factors. We believe the Appellants' failure to address the first factor, despite having the burden to prove their entitlement to sovereign immunity, "tend[s] to suggest that the Linden Municipal Court is not an arm of the State, but is more akin to a local entity or a municipal subdivision for Eleventh Amendment purposes." (*Id*. at 12.) Without more information on whether New Jersey "is under [an] obligation to pay [the Linden Municipal Court's] debts or reimburse [it] for judgment that it pays," *Fitchik*, 873 F.2d at 661, we cannot say that this factor weighs one way or another.

Similarly, the pleadings contain insufficient information to determine whether the second and third *Fitchik* factors favor dismissal of the official capacity claims. The second and third factors are interrelated. The second requires us to evaluate the status of the Linden Municipal Court, and its judges, under state law, i.e., "whether state law treats an agency as independent, or as a surrogate for the state," *id.* at 662, while the third requires an inquiry into the Linden Municipal Court's "degree of [] autonomy" in relation to the State of New Jersey. *Id.* at 663. The District Court noted that the Kirklands:

> stress that the Linden Municipal Court was created and funded by the municipality. They allege that [Judge] DiLeo is an employee of the City of Linden, not the State of New Jersey, and that he was appointed by the Mayor of Linden and confirmed by the Linden City Council. The Complaint stresses that the City of Linden shares the blame for Judge DiLeo's actions, but at no point implicates the State itself. Judge DiLeo emphasizes the status of the Linden Municipal Court as part of a unified state-wide judicial system. The

12

> judicial power exercised by municipal court judges, he argues, is the judicial power of the State.

(App. 13) (internal citations omitted). These allegations, "even as supplemented by judicial notice, do not compel a conclusion that the [Kirklands] cannot surmount the Eleventh Amendment barrier." (*Id*. (internal citation omitted).) The fact that Judge DiLeo failed to prove even a single *Fitchik* factor is enough to deny his motion to dismiss.

B. Claims Against the City of Linden

### i. Direct Liability

It is alleged that Linden has a "long standing custom and practice . . . to deny the accused their rights under the United States and New Jersey Constitutions." (App. 33.) The District Court found that, "[a]t the Complaint stage, these allegations suffice to set forth a plausible claim that the City of Linden tacitly endorsed a practice of denying defendants their constitutional rights." (*Id*. at 15.)

We review a district court's order denying a motion to dismiss de novo. *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). Because the allegations contained in the Complaint sufficiently "raise[s] [the Kirkland's] right to relief above the speculative level," *Twombly*, 550 U.S. at 555, we will affirm the District Court's denial of Linden's motion to dismiss.

To find Linden liable under 42 U.S.C. § 1983, it must be determined that Linden's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may

13

fairly be said to represent official policy, inflicts the injury" of which the Kirklands complain. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Indeed, Linden's liability may not be proven under the doctrine of *respondeat superior*. *Id.* at 691. Instead, we look at Linden's policy and custom to determine its liability. *Id.* "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted). Government custom can be demonstrated "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

We agree with the District Court. The Complaint set forth sufficient allegations that the City tacitly endorsed a practice of denying defendants their constitutional rights. The Kirklands have cited to other instances of constitutional violations by Linden, which we must accept as true, even without the benefit of discovery. Thus, we will affirm the District Court's denial of Appellant City of Linden's motion to dismiss the Complaint on this Count.

### ii. Conspiracy

Linden also argues that the Kirklands' claim of a civil rights conspiracy pursuant to 42 U.S.C. § 1985 is not properly pled in the Complaint, and should be dismissed

14

pursuant to Rule 12(b)(6). We disagree.[12] We review a district court's order denying a motion to dismiss de novo. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).

In order to establish that Judge DiLeo and Linden acted together to deprive the Kirklands of their civil rights, the Kirklands must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber*, 440 F.3d at 134.

The Complaint contains the following allegations:

> In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt acts, including, without limitation, the denial of the right to counsel to Plaintiffs, employing a municipal court judge to prosecute the Plaintiffs, permitting a police officer to cross-examine Plaintiffs, and incarcerating of Plaintiffs for ninety (90) days more than authorized by statute.

(App. 37.) These allegations sufficiently "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (internal quotation marks omitted), and thus, we will affirm the District Court's denial of Appellants' motion on this Count. We agree that the conspiracy claim should go forward so that discovery can be had on the merits.

---

[12] The District Court stated: "Plaintiffs believe that discovery will reveal that the City of Linden at least knew of and acquiesced in Judge DiLeo's methods." (App. 16.)

The District Court further held that the Kirklands' state claims would not be dismissed. Supplemental jurisdiction under 28 U.S.C. § 1367 will depend on the jurisdictional and substantive merits of the federal claims. Therefore, we agree with the District Court that the state claims should not be dismissed.

## III.   CONCLUSION

For the reasons set forth above, we will affirm the District Court's Order entered April 15, 2013, denying Judge DiLeo and Linden's motions to dismiss.