PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 21-2112 & 21-2366

———————

YASMINE COELLO

Appellant

v.

LOUIS M.J. DILEO; RICHARD J. GERBOUNKA, Mayor;
CITY OF LINDEN; NICHOLAS P. SCUTARI; KATHLEEN
ESTABROOKS; KATHLEEN ESTABROOKS, P.C.; JOHN
DOE(S) 1-10; ABC ENTITIES 1-10

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-20-cv-01682)
District Judge: Honorable Susan D. Wigenton

———————

Argued on April 11, 2022

Before:  AMBRO, SCIRICA, and TRAXLER[*], <u>Circuit
Judges</u>

(Opinion filed August 8, 2022)

Joshua F. McMahon
Suite 200
350 Springfield Avenue
Summit, NJ 07901

Kristen J. Piper
Brian D. Singleton **(Argued)**
Singleton
14 Walsh Drive
Suite 304
Parsippany, NJ 07054

            Counsel for Appellant

Robert F. Varady **(Argued)**
LaCorte Bundy Varady & Kinsella
989 Bonnel Court
Union, NJ 07083

                Counsel for Appellees Louis M.J. DiLeo,
                Richard J. Gerbounka, City of Linden,
                and Nicholas P. Scutari

---

[*] The Honorable William Byrd Traxler, Jr., United States Senior Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Yasmine Coello, convicted of harassment in 2007, succeeded over a decade later in having that conviction vacated. Only then did she file this civil rights action to recover for various abuses suffered during her criminal proceedings. The District Court dismissed most of her claims, concluding that Coello waited too long to bring them.

In this appeal we decide when Coello's filing clock began to run. The District Court held that it started at the time of her criminal trial and sentencing, when Coello first had reason to know of her alleged injuries. If so, her over-ten-year delay in bringing suit bars this action. According to Coello, however, that holding ignores the special timeliness rules governing her precise claims. Relying on *Heck v. Humphrey*, 512 U.S. 477 (1994), she argues that her claims all imply the invalidity of her criminal prosecution, such that she could not file suit until her conviction was vacated. If she is right, then her lawsuit was timely. Because we agree with Coello that *Heck* controls, we reverse the dismissal and remand for further proceedings.

# I. Background

In January 2007, Shirley Messina filed a private citizen complaint in a Linden, New Jersey municipal court. It accused Coello—who was at the time dating Messina's former boyfriend, David Figueroa, with whom Messina had a child—of harassment. Coello appeared in court, pled not guilty, and the charge was dismissed. That should have ended the story.

But, for reasons still unknown to her, it didn't. In February 2007, private attorney Kathleen Estabrooks submitted an affidavit to Municipal Judge Louis DiLeo requesting that she be appointed to prosecute Messina's complaint against Coello. Estabrooks submitted her affidavit under the New Jersey Court Rules, which permit courts to appoint a "private prosecutor to represent the State in cases involving cross-complaints." N.J. Ct. R. 7:8-7(b). But this prosecution did not involve a cross-complaint. Estabrooks's application was, moreover, incomplete: though she was required to state whether the municipal prosecutor had elected not to conduct the prosecution, she failed to do so.

The affidavit also required Estabrooks to certify whether there were any "facts that could reasonably affect [her] impartiality . . . and the fairness of the proceedings or otherwise create an appearance of impropriety." Appx. 81. She indicated there were none. Estabrooks did not disclose that, at the time she submitted her affidavit and throughout Coello's criminal proceedings, she was also representing Messina in custody and other civil actions against Coello's boyfriend, Figueroa—circumstances that could quite clearly bear on Estabrooks's ability to prosecute Coello's case impartially.

4

Without recording any findings as to the need for a private prosecutor or the suitability of Estabrooks for the role, Judge DiLeo approved her to serve as acting prosecutor. They proceeded to a bench trial in March 2007. Irregularities continued to pile up: at Estabrooks's request, Judge DiLeo allegedly had Coello removed from the courtroom while prosecution witnesses testified. He then cross-examined Coello when she took the stand in her own defense. Ultimately, he found her guilty on the harassment charge and sentenced her to 30 days in jail but suspended that sentence on the condition that she attend 26 weeks of anger-management counseling.

A post-trial hearing was held early the next year, in January 2008. At the hearing, Judge DiLeo noted that he had recently received a letter from Estabrooks stating:

> My client, Ms. Messina, has been forced to file another complaint against Ms. Coello for assault. Please see attached photo. The assault took place in the Township of Clark. Please advise if Ms. Coello completed the anger management course of twenty-six weeks as sentenced by Your Honor.

Appx. 33 ¶ 38. Coello attended the hearing without counsel. Estabrooks also attended but entered her appearance as private counsel for Messina. No municipal prosecutor was present; instead, Judge DiLeo allegedly assumed that role without inquiring into Coello's lack of representation.

Coello explained that she had a few weeks of anger management remaining but was having trouble scheduling it

5

due to a new job. A pastor from the Abundant Life Worship Center—where Coello was completing her counseling—was there to vouch for her substantial compliance with the program. Estabrooks nevertheless urged DiLeo to send Coello to jail, and he agreed, reinstating her 30-day jail term. He did not address any aggravating or mitigating factors, such as the protestations of the pastor or the needs of Coello's minor children. Instead, she was immediately incarcerated.

While in jail, Coello hired an attorney who moved for reconsideration. DiLeo did not schedule argument on the motion until January 30, 2008, 14 days into Coello's jail sentence. Although it is unclear whether that argument ever took place, Coello was released from jail on February 3, 2008, after having been incarcerated for 18 days.

Nearly nine years later, in November 2016, Coello filed a counseled application for post-conviction relief in New Jersey state court. She asked that her harassment conviction be vacated, arguing that the underlying proceedings were infected by a host of legal errors. The State (wisely) did not oppose Coello's application. It was by that time already familiar with allegations of judicial misconduct lodged against Judge DiLeo, such as those discussed by our Court in *Kirkland v. DiLeo*, 581 F. App'x 111 (3d Cir. 2014). There we affirmed a district court's denial of judicial immunity for DiLeo, where he was alleged to have tried two criminal defendants without allowing them defense counsel and without a municipal prosecutor present. *See id.* at 112–16.

With those proceedings in mind, the prosecutor in Coello's post-conviction proceedings noted on the record:

6

> Judge, I just want to assure the Court that this is—this entire issue is something that I really have considered very carefully. . . . I reviewed the facts of the case and, yes[,] my own experience and knowledge of this particular judge and the truly extraordinary lengths to which the judicial system has gone to excoriate [DiLeo] for what happened. And . . . I remember reading the Third Circuit opinion [in *Kirkland*] and was astonished that they went so far as to pierce his judicial immunity.
>
> I feel that the State is completely ill-equipped and we would not be serving the interest of justice by opposing [Coello's] application. . . . [I]n this particular case there is enough that is indisputable with respect to how [Estabrooks's private-prosecutor] application was incomplete and what happened to this young lady. It's just too much. The stench is too great. The interest of justice will not be served by seeing a conviction made . . . .

Appx. 38–39 ¶ 64. With no objection from the State, the court granted Coello's application for post-conviction relief and vacated her conviction on February 26, 2018.

A little under two years later, on February 18, 2020, Coello filed this federal civil rights action in the U.S. District Court for the District of New Jersey. She named multiple defendants: Estabrooks and her law firm (collectively, the "Estabrooks Defendants"), along with Judge DiLeo, Linden's former mayor Richard J. Gerbounka, its former municipal

7

prosecutor Nicholas P. Scutari, and the City of Linden itself (collectively, the "Linden Defendants").

Coello's complaint alleged eight federal and state claims against the Linden Defendants stemming from the 2007 trial and 2008 post-trial hearing. Three of the federal claims were brought under 42 U.S.C. § 1983: a Sixth Amendment claim alleging that certain Linden Defendants violated Coello's rights to counsel, to confront witnesses, and to a fair trial by conducting proceedings without her counsel present, excluding her from the courtroom during adverse witness testimony, and illegally transferring prosecutorial duties to Estabrooks (Count I); a Fourteenth Amendment claim alleging that certain Linden Defendants violated Coello's due process rights by, among other things, imposing a jail sentence without giving her the right to be heard or affording her legal counsel (Count III); and a claim alleging that Gerbounka and the City of Linden were liable for their deliberate indifference to this alleged misconduct (Count VIII). Coello asserted one federal claim for conspiracy to violate civil rights under 42 U.S.C. § 1985, alleging that certain Linden Defendants acted in concert to file and pursue criminal proceedings without probable cause and deny her constitutional rights (Count VI). And she brought four state-law claims, three of which mirrored her federal claims: Count II (violation of right to counsel, to confront witnesses, and to a fair trial, N.J. Const. art. I, § 10); Count IV (violation of due process rights, N.J. Const. art. I, § 1); and Count VII (civil conspiracy). Count V asserted a violation of the New Jersey Constitution's cruel and unusual punishment prohibition, N.J. Const. art. I, § 12, arising from Judge DiLeo's imposition of a 30-day jail sentence.

8

The Estabrooks and Linden Defendants each moved to dismiss. They raised several arguments for ending the action, including that certain of the Defendants were entitled to immunity, that Coello's claims were legally deficient, and that they were time-barred. With respect to the Linden Defendants, the District Court considered only the timeliness argument. It held that it was "clear on the facts that [Coello] believed that she was wrongfully sentenced in January 2008," such that she "had a complete and present cause of action for which she could file suit and obtain relief" in that year. Appx. 11 (internal quotation marks and citation omitted). Because she did not file suit until 2020, the Court concluded that her claims against these Defendants were untimely. It allowed three claims against the Estabrooks Defendants to proceed but dismissed with prejudice all claims against the Linden Defendants.

Coello moved for reconsideration, arguing that the Court improperly ignored the U.S. Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), which (as we will discuss) established special timeliness rules for certain civil claims. The Court denied the motion without analyzing *Heck*'s effect on Coello's complaint. Coello and the Estabrooks Defendants began discovery on the remaining claims but soon settled. She now appeals the District Court's dismissal of her claims against the Linden Defendants.

## II. Jurisdiction and Standard of Review

The District Court had original jurisdiction over Coello's federal claims under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over her state-law claims under 28

9

U.S.C. § 1367.  Our jurisdiction is under 28 U.S.C. § 1291.[1]
We exercise plenary review over a Federal Rule of Civil
Procedure 12(b)(6) dismissal on statute-of-limitations grounds,
*Lake v. Arnold*, 232 F.3d 360, 365 (3d Cir. 2000), accepting all
well pled allegations as true and resolving any "uncertainty in
the law governing the limitations bar in plaintiff's favor," *In re
Briscoe*, 448 F.3d 201, 219–20 (3d Cir. 2006).

## III.  Discussion

Just one question is before us:  Were Coello's claims
against the Linden Defendants timely?  We start with her
federal claims, most of which were brought under 42 U.S.C.

---

[1] The District Court dismissed Coello's claims against the
Linden Defendants with prejudice on October 21, 2020, via an
interlocutory order.  Coello filed this appeal on June 15, 2021,
after the settlement agreement between her and the Estabrooks
Defendants was approved, though prior to all her claims being
formally dismissed with prejudice.  On June 23, 2021, the
Court entered a stipulation and order of dismissal with
prejudice as to all remaining claims.  Coello asserts her first
appeal ripened with that dismissal order and (in the alternative)
filed a second appeal on July 20, 2021, which we consolidated
with the first.  The second appeal was clearly timely, *see* Fed.
R. App. P. 4(a), and so, we conclude, was the first, *see
Marshall v. Comm'r Pa. Dep't of Corr.*, 840 F.3d 92, 96 (3d
Cir. 2016) ("[W]here there is no showing of prejudice by the
adverse party and we have not taken action on the merits of an
appeal, a premature notice of appeal, filed after the disposition
of some of the claims before a district court, but before entry
of final judgment, will ripen upon the court's disposal of the
remaining claims.").

§ 1983. That statute—derived from § 1 of the Civil Rights Act of 1871—provides litigants an avenue to obtain money damages where state and local officials violate their federal constitutional or statutory rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012); *Schneyder v. Smith*, 653 F.3d 313, 318–19 (3d Cir. 2011).

A § 1983 claim, like any other civil cause of action, must be filed within a certain timeframe. We call this the statute of limitations, and its purpose is to prevent plaintiffs from "reviv[ing ] claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8–9 (2014) (quoting *R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944)); *Kreiger v. United States*, 539 F.2d 317, 322 (3d Cir. 1976) (noting that a goal of limitations periods is "to protect defendants from the unfair surprise of stale claims"). A claim not filed within the applicable limitations period will generally be dismissed as untimely.

Given their potentially decisive role in the life of a lawsuit, statute-of-limitations issues are frequently litigated. This case is no exception. And in such disputes two data points are central: (1) the amount of time the plaintiff has to file her claim; and (2) when it accrued—*i.e.*, the date on which "the plaintiff can file suit and obtain relief"—which starts the filing clock. *See CTS Corp.*, 573 U.S. at 7–8 (quoting *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013)). The first is not contested. The amount of time a § 1983 claimant has to bring suit is determined by the personal-injury law of the state where the alleged harm occurred, *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010), and the parties

11

agree that New Jersey law gives litigants two years to file a personal-injury claim, *see id.*; N.J. Stat. Ann. § 2A:14-2.

They disagree, however, on the second data point: when Coello's two-year deadline began to run. We assess this claim-accrual issue by looking to federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under that law, a § 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of her injury. *See id.*; *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). If that rule applies here, then Coello's claims accrued at the time of her criminal prosecution, well over two years before she brought this civil rights action, and thus were properly dismissed as time-barred.

But our timeliness analysis is complicated by *Heck*, which set distinct accrual rules for certain § 1983 claims. The plaintiff there was Roy Heck, an inmate serving a 15-year sentence for voluntary manslaughter. While the direct appeal of his criminal conviction was pending, he filed a civil suit under § 1983 alleging that state prosecutors and police conducted an "unlawful, unreasonable, and arbitrary investigation," destroyed exculpatory evidence, and relied on an "unlawful voice identification procedure" at his trial. 512 U.S. at 479.

Though framed as an action for civil damages, these claims would, if proven, undermine Heck's still outstanding criminal conviction. *Id.* at 483. The Court noted that his case thus rested "at the intersection" between prisoner litigation under the Civil Rights Act and the federal habeas corpus statute, 22 U.S.C. § 2254, the latter of which provides the "exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier

12

release." *Id.* at 480–81 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)). Still, because Heck's § 1983 action did not ask for his release from custody, but rather sought only damages for alleged prosecutorial and police misconduct, it could not be construed as a habeas claim in disguise. *See id.* at 481.

Because § 1983 "creates a species of tort liability," the Court looked instead to tort law to determine whether Heck could maintain his suit. *Id.* at 483 (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)). It held that his claims most closely resembled the common law tort of malicious prosecution, which "permits damages for confinement imposed pursuant to legal process." *Id.* at 484. A key feature of that tort is its requirement that the plaintiff cannot recover unless and until the underlying criminal proceedings terminate in his or her favor. *Id.* That requirement, in turn, "is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments," as well as a desire to "avoid[] allowing collateral attacks on criminal judgments through civil litigation." *McDonough v. Smith*, 139 S. Ct. 2149, 2156–57 (2019); *Heck*, 512 U.S. at 484.

To prevent Heck and others from using a federal civil statute to undermine an extant state criminal judgment, the Court extended the favorable-termination requirement to certain § 1983 claims:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal

13

judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486–87 (footnotes omitted) (emphasis in original). Put simply, if judgment in the § 1983 plaintiff's favor "would necessarily imply the invalidity of [her] conviction or sentence," the action must be dismissed unless that conviction or sentence "has already been invalidated." *Id.* at 487.

And because these § 1983 plaintiffs must wait to bring their civil claims until the underlying criminal proceedings are favorably resolved, the Court held that they are not governed by the same claim-accrual rules that apply in other federal

14

cases. Instead, a § 1983 claim that attacks the validity of a plaintiff's conviction or sentence does not accrue for statute-of-limitations purposes until the underlying criminal case is favorably terminated. *Id.* at 489–90; *see Wallace*, 549 U.S. at 393 (*Heck* "delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn" (emphasis removed)); *McDonough*, 139 S. Ct. at 2156–57 (a § 1983 claim alleging that the plaintiff's conviction was obtained with fabricated evidence was akin to a malicious prosecution claim and thus did not accrue until favorable termination). To the extent the successful resolution of Coello's claims would necessarily undermine her state criminal conviction and sentence, they are subject to this deferred-accrual rule.[2]

---

[2] Some circuits have articulated different claim-accrual rules depending on whether the § 1983 plaintiff is in custody. *See, e.g.*, *Cohen v. Longshore*, 621 F.3d 1311, 1316–17 (10th Cir. 2010) (claim accrues on the plaintiff's release from custody if he was unable to obtain collateral relief "through no lack of diligence on his part"); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 601–02 (6th Cir. 2007) (claim accrues on the plaintiff's release from custody if he was "precluded 'as a matter of law' from seeking habeas redress"). But in our Circuit we apply *Heck*'s favorable-termination requirement whenever a § 1983 action would necessarily undermine an outstanding state conviction, even if the plaintiff is (like Coello) no longer incarcerated. *See Bronowicz v. Allegheny County*, 804 F.3d 338, 345 n.12 (3d Cir. 2015) (favorable-termination requirement applies even to individuals who are "no longer in custody" (citing *Gilles v. Davis*, 427 F.3d 197, 209–10 (3d Cir. 2005))). So if Coello's civil claims attack her

15

We have little trouble concluding that Coello's § 1983 claims fall in *Heck*'s sphere. At bottom, they allege that her criminal proceedings were begun and conducted unlawfully and without probable cause, resulting in her wrongful conviction. *See* Appx. 54–57 (alleging a Sixth Amendment claim based on, *inter alia*, allegations that Coello's criminal proceedings were conducted without her counsel present and that Estabrooks was allowed to serve as a conflicted prosecutor in violation of New Jersey law); Appx. 60–63 (alleging a Fourteenth Amendment claim based on similar allegations); Appx. 73–75 (alleging that the City of Linden and its former mayor allowed criminal proceedings to be initiated against Coello without probable cause). They are, like Heck's claims, most akin to the tort of malicious prosecution. *See Thompson v. Clark*, 142 S. Ct. 1332, 1337–38 (2022) ("[T]he wrongful initiation of charges without probable cause is . . . the gravamen of the tort of malicious prosecution."); *McDonough*, 139 S. Ct. at 2156 (a § 1983 claim is akin to the malicious prosecution tort when it "challenge[s] the integrity of criminal prosecutions undertaken 'pursuant to legal process'" (quoting *Heck*, 512 U.S. at 484)). Moreover, we see "no logical way to reconcile [her] claims with a valid conviction," *Savory v. Cannon*, 947 F.3d 409, 417 (7th Cir. 2020) (en banc), which means they could not have accrued unless and until Coello's state criminal proceedings were resolved in her favor, *see Heck*, 512 U.S. at 489–90.

So when, if ever, did Coello's state criminal proceedings favorably end, thereby triggering the two-year filing deadline? *Heck* did not clarify what it means for a

conviction, they could not have accrued earlier than the day on which those proceedings terminated in her favor.

16

criminal prosecution to end in the § 1983 claimant's favor. In the past, however, we have held that the favorable-termination requirement is met only if the underlying criminal case concludes in a way that affirmatively "indicate[s] the plaintiff's innocence." *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009) (en banc); *see also Bronowicz*, 804 F.3d at 346 (requiring courts to consider "the 'particular circumstances,' including relevant state law and the underlying facts of the case, in determining whether the 'judgment as a whole reflected the plaintiff's innocence'" (alterations adopted) (quoting *Kossler*, 564 F.3d at 188)).

But our inquiry has since become simpler. In *Thompson v. Clark*, the Supreme Court fleshed out the meaning of "favorable termination" in the context of a Fourth Amendment claim under § 1983 for malicious prosecution. 142 S. Ct. at 1338–40. Looking to the way American courts interpreted that tort in 1871 (when the Civil Rights Act was enacted), it explained that a malicious prosecution claim could typically move forward merely by a showing that the plaintiff's criminal case ended with no conviction. *Id.* No affirmative indication of innocence was necessary back then; neither, said the Court, is it necessary today. *Id.* at 1340. *Thompson* thus abrogated our decision in *Kossler* and, in the process, streamlined our favorable-termination analysis. A § 1983 claim sounding in malicious prosecution accrues when "the prosecution terminate[s] without a conviction." *See id.*

Accordingly, because Coello's § 1983 claims sound in malicious prosecution, we hold that the favorable-termination requirement was met on February 26, 2018, when the state court vacated her criminal conviction. We make no inquiry into whether her post-conviction proceedings suggest her

17

innocence of the underlying charges.  Coello brought this suit within two years of that date; so, under *Heck*'s deferred-accrual rule, her § 1983 claims were timely.

The Linden Defendants, while declining to engage directly with *Heck* or its progeny, offer one argument in opposition.  They contend that Coello's "unexplained" delay in applying for post-conviction relief "renders her claims untimely."  Appellee Br. 15.  But if *Heck*'s deferred-accrual rule applies, then Coello's § 1983 claims did not exist until her conviction was vacated; thus they could not be deemed untimely by any delay in seeking post-conviction relief.

Read more charitably, the Linden Defendants ask us to impose a new rule cabining a plaintiff's ability to use *Heck* to overcome a statute-of-limitations defense: if a plaintiff waits too long to fulfill the prerequisite for claim accrual under *Heck*—that is, waits too long to get her conviction reversed, invalidated, expunged, *etc.*—she forfeits any civil claims that may accrue on favorable termination.  In support, they refer us only to general principles underlying statutory limitations periods, such as the need to create "stability in human affairs" and "induce litigants to pursue their claims diligently so that answering parties will have a fair opportunity to defend."  Appellee Br. 15 (internal quotation marks and citation omitted).  While we acknowledge that it could well prove harder to defend a § 1983 action that accrues long after the events underlying the plaintiff's claims have passed, we see no need at this time to complicate further our *Heck* inquiry by imposing the abstract diligence requirement suggested.  Thus our only option is to reverse the dismissal of Coello's § 1983 claims and remand for further proceedings.

18

But what about her non-§ 1983 claims?  Although *Heck* addressed only that statute, Coello asks us to extend its deferred-accrual rule to all her counts, five of which were brought under different statutory vehicles: one federal conspiracy claim under 42 U.S.C. § 1985 and four state constitutional and conspiracy claims brought under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 *et seq.*  We conclude that these claims too accrued when Coello's criminal conviction was vacated and hence were timely.

Starting with the § 1985 claim, we see no reason why *Heck*'s rules for civil damages suits that attack an outstanding criminal conviction would not extend to this federal cause of action.  Section 1985 allows a plaintiff to seek money damages where others conspire to deprive her of equal protection under the law.  42 U.S.C. § 1985(3); *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001).  Coello's § 1985 claim, much like her § 1983 claims, alleges that several of the Linden Defendants participated in a scheme to begin and maintain criminal proceedings against her without probable cause and deny her various constitutional rights.  These allegations, if proven, would necessarily imply the invalidity of her criminal conviction and therefore raise the same concerns that prompted the *Heck* Court to recognize a favorable-termination requirement in similar § 1983 cases.  *See Heck*, 512 U.S. at 484 (citing the need to prevent "two conflicting resolutions arising out of the same or identical transaction" and bar convicted criminals from mounting collateral attacks on their convictions via civil damages actions); *see Roberts v. City of Fairbanks*, 947 F.3d 1191, 1198 n.8 (9th Cir. 2020) ("*Heck* applies equally to claims brought under § 1985); *Amaker v. Weiner*, 179 F.3d 48, 51–52 (2d Cir. 1999) (same).

And while a cause of action brought under state law is not subject to *Heck*'s claim-accrual rules, it appears New Jersey law also holds that a malicious prosecution claim cannot proceed until the underlying criminal proceedings end in the plaintiff's favor. *See Penwag Prop. Co. v. Landau*, 388 A.2d 1265, 1266 (N.J. 1978) (per curiam) ("It is not appropriate to institute a suit or file a counterclaim until the litigation has terminated in favor of the party who asserts the malicious prosecution cause of action."); *Muller Fuel Oil Co. v. Ins. Co. of N. Am.*, 232 A.2d 168, 174 (N.J. Super. Ct. App. Div. 1967) ("Since a suit for malicious prosecution must await a favorable termination of the criminal proceeding, the statute of limitations does not begin until such termination."). Like her federal claims, Coello's state claims resemble the malicious prosecution tort and thus could not have accrued until the state court vacated her conviction. *See, e.g.*, *Bessasparis v. Township of Bridgewater*, No. A-1040-19, 2021 WL 1811637, at *7 (N.J. Super. Ct. App. Div. May 6, 2021) (per curiam) ("Plaintiffs may not have used the phrase 'malicious prosecution' in [their NJCRA] counts, but it is clear that those causes of action are based on [the] allegedly wrongful institution of criminal actions against [them]. Those causes of action accrued . . . the day the municipal court issued orders of dismissal of the complaint-summonses.").

\*     \*     \*

Coello may have known she was wronged by the Linden Defendants' alleged misconduct back in the aughts, at the time of her criminal prosecution. But her current claims, all of which attack the validity of those state proceedings, did not exist until much later. Because these claims accrued for statute-of-limitations purposes when her harassment

20

conviction was vacated in February 2018, her federal complaint was timely filed. We therefore reverse and remand for the District Court to consider the other arguments raised by the Linden Defendants in their motion to dismiss, including whether any of those Defendants is entitled to immunity from this action.